UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SAMPLE,<br><br>          Plaintiff,<br><br>    v.<br><br>MATTHEW SMITH, et al.,<br><br>          Defendants. | Case No. 3:23-cv-00428-WHO<br><br>**ORDER ON MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 12, 13 |

Pro se plaintiff Joseph Sample filed this employment discrimination lawsuit against many defendants, alleging, among other things, that he experienced a hostile work environment from 2018 until 2022 because of pervasive racism and ableism at his workplace. Several defendants moved to dismiss. For the following reasons, the motions are GRANTED in part and DENIED in part.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

According to the complaint, Sample worked as a driver for Cemex Construction Materials Pacific, LLC ("Cemex") in Antioch, California, from 2018 to 2022. ("Compl.") [Dkt. No. 1] at pdf 6.[1] He alleges that he "was the only African American driver" at Cemex, *id.* 4:6-7, and one of two African American employees at the plant, *id.* 6:22-23. Sample lives with two disabilities: a speech impediment and "malrotation, which is where [Sample] laid on one side in his mother's womb too long without rotating or turning over" and so his ear did not "develop properly." *Id.*

---

[1] To file this lawsuit, Sample attached his pro se complaint to a standard form provided by the Northern District of California for "Complaint for Violation of Civil Rights." The citations in this Order refer to the page and line numbers from the complaint itself and also use page numbers from the pdf to cite the form.

3:20-26.

While employed by Cemex, Sample asserts that he was regularly subjected to racist and ableist slurs, including the n-word, "jungle bunny," "catfish," "monkey[]," and "cabbage patch." *Id.* 4:12-15, 5:7-9. He alleges that Laura Larson, James Hazen, David Holdren, an employee named Joline, and others were members of a "racist hate crew" that called him slurs. *Id.* 5:7-9, 5:20-6:3, 6:11, 7:3-6. He also asserts that Hazen followed Sample around the plant making monkey noises and said to Sample, "Aren't you glad those slavery days are over?" *Id.* 5:20-6:3. In the complaint, Sample says the following exchange occurred:

> Hazen went on to say, . . . "[W]e cannot legally hang your retarded ass,["] (then held his hand up, as if holding a rope around the neck [and] cocked his head to the side, his tongue out of his mouth, as if hanged). Defendant Hazen stated, "they should've killed your monkey ass when you were born you chitterling, shit eating mother fucker."

*Id.* 5:27-6:3.

Sample says that he complained to Kim Linton and Joanna Pine in Human Resources about the racial slurs, but they failed to take corrective action. *Id.* 4:12-5:6, 6:9-14. He also alleges that he asked Demetrius Hawkins to transfer him to another plant, but that Hawkins, who is also Black, denied the transfer by saying that he did not experience racism at Cemex so Sample could not have, either. *Id.* 6:25-7:2.

Sample pleads that Mike Hughes was his Union Representative and that Hughes laughed when informed about the racial slurs. *Id.* 7:20-8:5. He says that Hughes viewed Sample and Sample's complaints as "a problem for the company" and that Hughes called Sample the n-word multiple times. *Id.* 8:6-27. Sample alleges that these actions violated union policies. *Id.* 9:1-2.

According to the complaint, it seems that a turning point came when a letter was submitted to the DMV that led to Sample losing his driving license, which contributed to him to losing his job at Cemex. *See id.* 9:3-5. He seems to assert that someone at Cemex sent a false letter in retaliation for Sample complaining about racism in the workplace, *id.*, and he alleges that Hughes and Hawkins knew who wrote the letter but refused to tell Sample, *id.* 5:14-16, 8:10-12. Sample later learned that Joline made a false report "to management" claiming that Sample "backed his commercial truck into a pole of some sort," but that Joline later admitted to management that she

lied. *Id.* 6:20-22, 7:6-9. Sample says that he overhead Joline telling Hazen and Holdren that she lied because she "want[ed] that monkey dog looking motherfucker's job" and that Hazen responded, "[M]an we could drop a load on his ass and be done with the [n-word]." *Id.* 7:12-17. The report and DMV letter caused Sample to lose his commercial license and he was apparently without pay for a month or two. *Id.* 10:11-16.

According to the complaint, on March 8, 2022, Hughes told Sample that the union would not represent him in suing the company. *Id.* 9:13-16. That same day, "there was a traffic accident that involved" Sample's truck and another vehicle, and Sample was immediately fired. *Id.* 9:16-26. Sample asked for but was not given a grievance meeting until the end of May 2022, at which point he was reinstated with back pay. *Id.* 9:26-10:10. The harassment continued. *Id.* 10:10.

Sample alleges that as a result of the defendants' actions, including the creation of a hostile work environment, he sustained mental and psychological injuries, including a "mental breakdown," which required professional treatment. *See id.* at pdf. 7, 9:10-11. He brings claims against "East Bay District Manager" Matthew Smith, Hughes, Linton, Larson, Hazen, Holden, Pine, and Hawkins. *Id.* at pdf 2-6. He asserts his claims under 42 U.S.C. § 1983, apparently for violation of his First, Eighth, and Fourteenth Amendment rights, *see* Compl. 2:3-8, 4:25, 9:8 (First Amendment); 9:8 (Eighth Amendment); as well as under the Americans with Disabilities Act ("ADA"), *see id.* 2:10-12, 11:2-3; and under Title VII of the Civil Rights Act, *id.* 4:20, 11:3-4.

## II.     PROCEDURAL BACKGROUND

After Sample filed the complaint, two groups of defendants moved to dismiss. The first motion was filed by Linton, Pine, Hawkins, and Larson (the "employee defendants"). ("Employees' Mot.") [Dkt No. 12]. The second motion to dismiss was filed by Hughes. ("Hughes Mot.") [Dkt. No. 13]. A summons was issued as to Smith, Hazen, and Holdren, [Dkt. No. 11], but it is not clear if they were served, and they have not appeared in this action.

Sample filed a motion for an extension of time in which to respond to the motions, [Dkt. No. 21], which I granted, [Dkt. No. 22]. He did not file an opposition. The employee defendants filed a notice regarding the lack of opposition. [Dkt. No. 24]. Sample subsequently filed a motion to appoint counsel. [Dkt. No. 26]. I held a hearing at which Sample and counsel for the employee

defendants and for Hughes appeared.

## LEGAL STANDARD

### I. RULE 8

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). "[T]he 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To comply with Rule 8(a), a plaintiff "must allege the basis of his claim against each defendant . . . to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

### II. RULE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to

amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

**DISCUSSION**

**I.      SECTION 1983 CLAIMS**

Both sets of defendants move to dismiss all claims brought under 42 U.S.C. § 1983 as improperly brought against private individuals. "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015) (citation omitted). "The state-action element in section 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Mendez v. Cal. Tchrs. Ass'n, et al.*, 419 F. Supp. 3d 1182, 1185 (N.D. Cal. 2020), *aff'd*, 854 F. App'x 920 (9th Cir. 2021) (quoting *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)). "Where the actions complained of are undertaken by a private actor, '[s]tate action may be found . . . only if[] there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated

1  as that of the State itself.'" *Id.* (quoting *Caviness*, 590 F.3d at 812).

2  Sample's claims are asserted against private individuals and do not relate at all to state
3  action. Accordingly, Sample cannot show the alleged conduct was committed by individuals
4  acting under color of law, and his § 1983 claims are DISMISSED with prejudice. *See Cato*, 70
5  F.3d at 1106 (warranting leave to amend for pro se litigants "unless it is absolutely clear that the
6  deficiencies of the complaint could not be cured by amendment).

## II.   NLRA PREEMPTION AND TIME BAR

Hughes moves to dismiss all claims against him as the union representative for being preempted by the National Labor Relations Act ("NLRA") and time barred. Hughes Mot. 4:24-5:26. Hughes's argument is that Sample's claims are essentially duty of fair representation claims because Sample asserts that Hughes failed to properly represent him and remedy his workplace issues, and that duty of fair representation claims are subject to a six month statute of limitations. *Id.*

I do not read Sample's complaint to bring duty of fair representation claims, especially because Sample alleges that Hughes called Sample racial slurs, meaning Hughes contributed to the alleged hostile work environment. Compl. 8:6-27. To the extent that Sample brings those claims, though, they are DISMISSED with leave to amend to plead why the statute of limitations does not apply. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983) (applying a six-month statute of limitations). The remaining claims, concerning Hughes' contribution to the hostile work environment, survive for now.

## III.   REMAINING CLAIMS

Liberally construed, *see Bretz*, 773 F.2d at 1027 n.1, Sample's complaint brings claims for employment discrimination under Title VII, *see* Compl. 4:20, 11:3-4, and claims for disability discrimination under the ADA, *see id.* 2:10-12, 11:2-3. The defendants do not address these claims. The employee defendants instead argue that to the extent that Sample alleges any non § 1983 claims, they are preempted by the LMRA.

"[A] plaintiff bringing a hostile work environment claim must show discrimination by an employer on account of membership in a protected group under 42 U.S.C. § 2000-e-2(a)(1)" and

that "[t]he offensive conduct [was] 'sufficiently severe or pervasive to alter the conditions of employment." *Sharp v. S&S Activewear, L.L.C.*, No. 21-17138, 2023 WL 3857491, at *3 (9th Cir. June 7, 2023) (quoting *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020)). "It is enough" to plead that the "hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Sample's allegations meet this standard. He plausibly and vividly pleads facts showing a hostile work environment based on being subject to constant racial slurs, and he plausibly alleges that the false report to the DMV and his ultimate termination were because of his coworkers' and employer's racist views. Accordingly, this claim survives. However, if Sample amends his complaint, he is encouraged to plead facts showing that he exhausted his administrative remedies or any remedies required by his collective bargaining agreement before filing this lawsuit and to clarify whether the workers contributing to the hostile environment were peers and coworkers, supervisors, or something else. Alternatively or additionally, Sample may try to bring his race-based claims under 42 U.S.C. § 1981, which may not require administrative exhaustion. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 456 n.3 (1975) ("[W]e have no occasion here to express a view as to whether a § 1981 claim of employment discrimination is ever subject to a requirement that administrative remedies be exhausted.").

Sample's disability discrimination claim, however, is DISMISSED with leave to amend. "[T]o establish a prima facie case of discrimination under the ADA [Sample] must show that []he: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of h[is] disability." *Parks v. Port of Oakland*, No. 16-CV-04061-HSG, 2018 WL 4350113, at *4 (N.D. Cal. Sept. 10, 2018) (quoting *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001)). "The term 'qualified individual' means an individual who, with or without reasonable

7

1 accommodation, can perform the essential functions of the employment position that such
2 individual holds or desires." 42 U.S.C.A. § 12111(8). Sample's allegations about his speech
3 impediment and his malrotation are likely sufficient to show he is disabled, but it is not entirely
4 clear that the complaint contains allegations that he suffered an adverse employment action due to
5 his disability. *See Parks*, 2018 WL 4350113, at *4. Rather, the adverse employment actions—not
6 being able to work because of the false DMV report and being summarily fired after the
7 accident—seem to be motivated by racism, rather than ableism, at least as currently pleaded. On
8 amendment, to the extent possible, Sample should clearly explain how he was adversely affected
9 at work because of his disabilities.

Finally, with respect to the employee defendants' sparse argument that any non-§ 1983 claims are preempted by section 301 of the LMRA, it is not clear how a statute concerning suits against unions would prevent Sample from bringing these claims against individual employees and supervisors. The defendants do not elaborate on this argument, and so the motion is DENIED on this basis.

## IV.    RULE 8

The employee defendants also move to dismiss the entire complaint as "unintelligible" under Rule 8. Employee Mot. 3:10-24. Though this pro se complaint is less straightforward than a represented complaint would likely be, it is intelligible. *See supra* Factual Background. And, this order dismisses most claims under FRCP 12(b)(6). Accordingly, the motion is DENIED as to this argument.

## CONCLUSION

For those reasons, the motions to dismiss are GRANTED in part.

As will be detailed in a subsequent order, Sample will be given the opportunity to seek counsel through the court's "Legal Help Center" for unrepresented parties. There is a link on the Court's homepage at www.cand.uscourts.gov titled "If You Don't Have a Lawyer" that provides additional information. In San Francisco, the Legal Help Center can be contacted at 415-782-8982 or fedpro@sfbar.org. A case management conference will be held on September 12, 2023, at 2:00 p.m. via Zoom videoconference to assess the status of locating counsel. To provide Sample

1  sufficient time to locate counsel and file an amended complaint, this case is STAYED at least until
2  that conference.
3         **IT IS SO ORDERED.**
4  Dated: June 28, 2023



William H. Orrick
United States District Judge