**ADANTE D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**ANGEL M. ALEXANDER, ESQ., PL-492703**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208,
Oakland, California  94607
Telephone: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: AAlexander@LawyersFTP.com

**CHAMBORD BENTON-HAYES,**
**SBN 278970**
BENTON EMPLOYMENT LAW, PC
2831 Telegraph Avenue
Oakland, California  94609
Telephone: 510-650-0250
Email:
Chambord@BentonEmploymentLaw.com

Attorneys for Plaintiff JOSEPH SAMPLE, JR.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SAMPLE, JR. <br><br> Plaintiffs, <br><br> v. <br><br> CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC; JOANNA PINE; DEMETRIUS HAWKINS;  KIMBERLY LINTON <br><br> Defendants. | Case No.: 3:23-cv-00428-WHO <br><br> **FOURTH AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. **Race Discrimination in violation of FEHA and Title VII;** <br> 2. **Disability Discrimination in violation of FEHA and ADA;** <br> 3. **Failure to Accommodate in violation of FEHA and ADA;** <br> 4. **Failure to Engage in the Interactive Process in violation of FEHA and ADA;** <br> 5. **Harassment and Hostile Work Environment in violation of FEHA and Title VII;** <br> 6. **Retaliation in violation of FEHA and Title VII;** <br> 7. **Retaliation in violation of California Labor Code §1102.5 and SB 497;** <br> 8. **Failure to Prevent Discrimination, Harassment, and Retaliation in violation of FEHA;** <br> 9. **42 U.S.C. §1981; and,** <br> 10. **Wrongful termination in violation of FEHA.** <br><br> **(JURY TRIAL DEMANDED)** |

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Plaintiff JOSEPH SAMPLE, JR, ("SAMPLE" or "Plaintiff") demanding a jury trial, brings this action against Defendants CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC ("CEMEX"), JOANNA PINE ("PINE"), DEMETRIUS HAWKINS ("HAWKINS"), and KIMBERLY LINTON ("LINTON") collectively ("Defendants") for general, compensatory, punitive, and statutory damages, and costs and attorney's fees resulting from Defendants' unlawful conduct, and as grounds therefore alleges as follows:

## **NATURE OF THE ACTION**

1. This is an egregious disability and race discrimination case where Plaintiff Joseph Sample endured ongoing harassment being called "retarded," "monkey," the "N-word," and other slurs by co-workers almost daily. On February 24, 2025, Cemex wrongfully terminated SAMPLE in retaliation for whistleblowing about his ongoing harassment and needing medical accommodation for his disabilities. The fear of losing his job—while on a stress leave of absence from work—was too petrifying to bear and SAMPLE suffered a heart attack upon reading the threatened termination correspondence.

2. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this Complaint, Defendant CEMEX is a limited liability company authorized to operate in the State of California with its principal place of business in Houston, Texas. Defendant CEMEX was and is Plaintiff's employer in the relevant time period.

3. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this Complaint, Defendant JOANNA PINE was the Human Resources Director for Defendant CEMEX.

4. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this Complaint Defendant DEMETRIUS HAWKINS was a Plant Manager for Defendant CEMEX.

5. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this Complaint, Defendant KIMBERLY LINTON was the Human Resources Business Partner including but not limited to "the Bay Area" at CEMEX.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

6.    This Court has jurisdiction pursuant to 28 USC §§ 451, 1331, and 1337. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and The Fair Employment and Housing Act ("FEHA") (California Government Code § 12900, *et seq*.), the Americans with Disabilities Act 42 U.S. Code § 12101, *et seq*. and other laws protected employees from discrimination.

7.    Venue is proper in The Northern District of California because Plaintiff's employment occurred, and the unlawful practices were committed at the Cemex Antioch Ready-Mix Concrete Plant, in Antioch, California and Concord Ready Mix Plant in Concord, California.

8.    Because this action arose in Contra Costa County, it should be assigned to the Oakland Division of this Court.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9.    On February 8, 2024, the State of California Civil Rights Department ("CRD") issued a Right-To-Sue letter. On July 25, 2024, Plaintiff submitted an amended Charge to the CRD and the CRD issued an amended Right-to-Sue letter. On November 12, 2024, Plaintiff submitted an amended Charge to the CRD and the CRD issued an amended Right-to-Sue letter.  On May 9, 2025, and May 12, 2025, Plaintiff submitted amended Charges to the CRD and the CRD issued an amended Right-to-Sue letters. (**Exhibit A and Exhibit B**).

**FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION**
        *CEMEX*

10. Defendant CEMEX is a global building materials company and leading supplier of concrete and building materials. Defendant CEMEX is also one of the largest cement companies in the world. They have plants and facilities all over California.

        *Joseph SAMPLE – Disabled African American*

11. SAMPLE has been disabled since birth. He was born with congenital aural atresia (born without an ear canal) which is an outward manifestation of his brain never fully developing internally. His mother was very protective of him and worried about the bullying he would

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

experience in his life. She instilled in him courage, strength, structure, and abundant love. Throughout his childhood and adolescence, he was always in special education. He struggled with reading and writing. It took him longer than other children to learn things. Children cruelly bullied him. Undeterred, he knew with the support of his family and God, he could accomplish anything he worked hard to achieve. He prayed for a successful life.

12. SAMPLE's family owned a popular soul food restaurant in San Francisco. He worked in their restaurant since he was a young child, which, he loved. Eventually SAMPLE wanted more. During a church service, he learned about CEMEX hiring cement truck drivers. It sounded like a great opportunity, so he applied.

### SAMPLE's Work Ethic is Unmatched

13. In or about August 2, 2017, SAMPLE was hired as a driver for Defendant CEMEX at its Antioch Ready-Mix Concrete Plant.

14. From August 2, 2017, to September 28, 2017, SAMPLE was on probation as a Ready Mix truck driver at Cemex. He failed his probationary period and was terminated. Undeterred, on or around May 15, 2018, he was re-hired and passed his probationary period as a Ready Mix driver. He and his family were proud of this accomplishment.

15. SAMPLE's work ethic is unmatched. He rarely missed days at work and many of those days he volunteered to work fourteen to sixteen hour shifts to help his team and support CEMEX. He is also a testament to all a disabled individual can accomplish if given the opportunity.

### SAMPLE is Relentlessly Harassed Because He is Disabled and Black; He Makes Legally-Protected Complaints But CEMEX Refuses to Investigate;

16. Because SAMPLE is disabled, performing certain job duties at times take him longer. When frustrated, his speech might become impaired, and he has some diminished capacity of hearing on the right side. He also walks with a limp. Despite his visible disabilities, CEMEX never engaged him in the interactive process nor offered any accommodation(s). Instead, he was relentlessly harassed, taunted, and verbally abused by many of his co-workers including

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

CEMEX managers.

17. Other employees corroborate that SAMPLE was regularly called "retarded" to his face and, more often, when he was not around. Other discriminatory comments of co-workers and manager included but were not limited to "he is slow," "dummy," "something's wrong with him," "his ears are small," and "he talks funny."

18. SAMPLE was also one of the few African American employees and, at one time, he was the only African American Ready Mix driver. The "N-word" was regularly used at both Concord and Antioch Plants, where SAMPLE worked, despite the lack of African American employees. SAMPLE was called the "N-word" several times by co-workers and supervisors. Co-workers also put a noose in the break room to scare SAMPLE in reference to historical lynching of African Americans. He lived in a daily nightmare where he was ridiculed for merely existing and trying to do his job.

19. When SAMPLE mustered the courage to repeatedly complain about this brutal harassment, HAWKINS (his Direct Manager), LINTON (Human Resources Business Partner "HRBP"), and PINE (Director of HR) refused to investigate. SAMPLE made legally-protected complaints in writing, in-person, and at grievance hearings. Instead of taking his legally-protected complaints seriously and conducting timely good faith investigation, HAWKINS, LINTON, and PINE initiated a campaign of retaliation.

**Cemex Cultivates an Environment Where Harassment
Is Not Only Tolerated but Encouraged**

20. In early January of 2022, CEMEX took no corrective action against an employee(s) identified as falsely reporting to the California Department of Motor Vehicles ("DMV") that SAMPLE was an unfit driver. On or about January 3, 2022, the allegation resulted in the suspension of SAMPLE's commercial driver's license, leaving him unable to work and earn an income. SAMPLE applied for unemployment; however, the funds were not released until April 2, 2022, and SAMPLE was forced to sell his home in order to avoid foreclosure.

21. SAMPLE's licenses were eventually reinstated, and Plaintiff returned to work on or

about February 25, 2022.

*Defendants Retaliated and Terminated Plaintiff for Reporting Discrimination and Harassment*

22. On or about March 8, 2022, SAMPLE was involved in a minor traffic collision that involved SAMPLE's work vehicle. Defendant CEMEX instructed Plaintiff to return his truck to the yard and go home while the incident was investigated.

23. Shortly thereafter, SAMPLE received a letter dated March 11, 2022, stating that he was terminated effective immediately because CEMEX had determined he was at fault for the accident.

24. CEMEX received the police report of the accident, dated March 15, 2022, which states that the officer at the scene could not determine fault.

25. Prior to receiving the notice of termination, SAMPLE was never given the opportunity to discuss the incident with CEMEX. He was, however, contacted several times by Michael Hughes, who told him that he should resign and find another job and that he would lose if he tried to take his termination to the ACA Board.

26. On or about May 16, 2022, the ACA Board of Adjustment granted Plaintiff's grievance hearing, ultimately reinstating Plaintiff to his former position.

**Sample Repeatedly Makes More Legally-Protected Complaints Which Cemex Refuses to Investigate; He Requires a Medical Stress Leave of Absence From Work**

27. Commencing on or around July 17, 2024, due to the ongoing harassment, SAMPLE was taken off work by Sandra H. Smith Ph.D., Disability Specialist, and Psychologist. Dr. Smith notes specifically, "as the patient is not able to return to a regular job schedule, the patient is not able to perform any of his/her job functions at this time." SAMPLE's medical leave of absence was protected under CFRA/FMLA from July 17, 2024, through October 4, 2024.

28. During SAMPLE's stress medical leave of absence, CEMEX's HR (PINE, LINTON and others) relentlessly harassed SAMPLE via letters, email and text messages forcing him to submit additional documentation instead of allowing him to rest and recover. Indeed, SAMPLE

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

had submitted the necessary notice that he required a medical leave as an accommodation.

29. On or around December 23, 2025 (two days before Christmas), SAMPLE was battling pneumonia. Despite disclosing this to LINTON, she continued to text SAMPLE requesting his medical notes.

30. Also, on or around December 23, 2025, Sample made a legally-protected complaint, texting:

> I've been sick. Had pneumonia which you got the documents. Going to the doctor about the forms but I need time. **This is discrimination and harassment because I filed lawsuit and I am out on medical leave**. Please stop mistreating while I am out sick. (*emphasis added*)

LINTON responded:

> Good morning Joseph how much additional time are you needing in order to provide the documentation? To be clear, you have been asked to provide similar documentation since October 14. Thank you.

31. Despite this clear legally-protected complaint, human resources refused to investigate SAMPLE's complaints.

32. SAMPLE's medical leave was extended by Dr. Smith until May 8, 2025. As such, SAMPLE required further leave as a reasonable accommodation. SAMPLE intended to return to work on May 8, 2025 (Dr. Smith would clear him to do so) and complete his Department of Transportation clearance on or before May 17, 2025.

33. Despite SAMPLE's plans to return to work, CEMEX had other plans for him. On February 11, 2025, CEMEX sent a letter to SAMPLE threating him with "voluntary job abandonment." On February 12, 2025, SAMPLE interpreted CEMEX's letter to mean that he was being terminated. Terrified of losing his job, medical insurance, and livelihood, SAMPLE had a heart attack, stayed two days in the hospital, and required placement of a stint.

34. On February 20, 2025, counsel for SAMPLE reached out to opposing counsel providing the medical note again and advising them that "my client has a serious medical condition that requires accommodation."

35. On February 24, 2025, Cemex wrongfully terminated SAMPLE within less than ninety

(90) days of making a legally-protected complaint on December 20, 2024. Indeed, there were only sixty-six (66) calendar days between SAMPLE's legally-protected complaint and his retaliatory and wrongful termination. CEMEX also immediately terminated SAMPLE's healthcare despite his having just suffered a heart attack because of their deplorable actions.

36.  On or around May 8, 2025, SAMPLE's doctors cleared him to return to work. (**Exhibit C,** SAMPLE's medical releases to return to work.) Indeed, SAMPLE's medical leave of absence was not indefinite. SAMPLE completed his DOT recertification exam which was due to expire on May 16, 2025.

### *For Years, SAMPLE Endured a Hostile, Intimidating, Offensive, Oppressive, and Abusive Work Environment*

37.  In 2017, SAMPLE's trainer referenced "your Black Ass" on several occasions.

38.  In 2019, Laura Larson told Plaintiff several times, "N* won't you just quit?"

39.  In 2020-2021, James "Jim" Hazen told him one time,

- "It's always that jungle bunny N* that fucked up."
- James "Jim" Hazen called him Monkey at least two times.

40.  In 2021 David Holdren said, "I want that monkey dog looking motherfucker's job."

- James "Jim" Hazen said "Man, We could drop a load on his ass and be done with the N*"
- Kimberly Linton said, "Technically and as history reflects, maybe you are what you seem to be so offended by, and you just need to loosen up and go with it."

41.  In 2021-2022, James "Jim" Hazen told him,

- "They should've killed your monkey ass when you were born, you chittering, shit-eating motherfucker."

42.  In 2022, Demetrius Hawkins said,

- "None of your co-workers like you, but there are two of them I know for a fact that hates you and has turned most of them against you. You're not getting the transfer, and just so you know, I don't like you either, now get out of here and do your job."
- "There is no race discrimination directed at me, so you must be the problem."

43.  Throughout his employment, Plaintiff was also called by drivers, co-workers and even managers:

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

- "Retarded";
- "The retard";
- "Slow";
- "He's slow";
- "There is something wrong with him";
- "Dumb/Dummy";
- "Idiot";
- "Nigger"'
- "Stupid Nigger"
- "Jungle Bunny"
- "Catfish"

44. SAMPLE filed multiple complaints with HR personnel, including Defendant PINE, LINTON and with Plant Manager Defendant HAWKINS. Defendants failed to take Plaintiff's complaints seriously and conduct a timely, good faith investigation. Said duties are ongoing. In fact, Defendants responded to Plaintiff's complaint of racial and disability discrimination and harassment *with* additional racial and disability discrimination, harassment, retaliation, and a litany of other ongoing adverse actions.

45. SAMPLE filed multiple grievances of racial and disability discrimination and hostile work environment with Teamsters Local Union No. 315 ("Union"), Business Agent Michael Hughes told Plaintiff, "You are becoming a problem for the company, and we are tired of you causing havoc with your complaints about the workers lying on you and trying to make you lose your job as well as calling you the "N" word and this jungle bunny mess."  Hughes then informed Plaintiff that he would not represent Plaintiff if he continued to pursue his grievances. SAMPLE was reinstated after termination multiple times.

### FIRST CAUSE OF ACTION

**Racial Discrimination**
**(California Government Code §§ 12940(a); Title VII 42 U.S.C. §§ 2000e, *et seq.*)**

(Plaintiff Joseph Sample Against Defendant CEMEX)

46. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

47. Plaintiff at all times material hereto was an employee covered by FEHA, California Government Code §§ 12940(a) and (j), which prohibits an employer from mistreating and/or

harassing an employee on the basis of race.

48.  CEMEX was at all times an employer as defined under the FEHA.

49.  Pursuant to 42 USC §2000e-2, it is unlawful to fail or refuse to hire or to discharge any individual, or otherwise, to discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.

50.  As a readily identifiable African American, Plaintiff is a member of a protected class. Defendant discriminated against Plaintiff on the basis of his race including but not limited to making racist remarks such as calling him the "N-Word," "monkey," "jungle bunny," and hanging a noose within the lunchroom. CEMEX also engaged in other adverse actions including but not limited to: suspending him for five (5) days without pay, requiring him to take days off work, writing him up multiple times, and failing to investigate his legally-protected complaints of discrimination, harassment, and retaliation. Also, wrongfully terminating Plaintiff multiple times. Defendant CEMEX was aware of, approved, and ratified this discrimination.

51.  Plaintiff's race was the substantial motivating reason for Defendant's mistreatment of him. When Plaintiff made a legally-protected complaint about the racial mistreatment, harassment, and retaliation, he was met with more racial animus and mistreatment from Defendants LINTON, PINE, HAWKINS, and others.

52.  Plaintiff was harmed.

53.  Defendant's conduct was a substantial factor in causing Plaintiff's harm.

54.  Plaintiff was qualified for his position.

55.  Similarly situated individuals outside of Plaintiff's race (African American) were treated more favorably.

56.  As a direct and proximate result of the unlawful conduct and discrimination by Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, symptoms of anxiety, symptoms of depression, and sleep disturbances. Damages are in an amount in excess of jurisdictional requirements and according

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

to proof.

57. Defendants maliciously, fraudulently, and oppressively committed the acts alleged herein, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

58. Plaintiff incurred and continues to incur attorneys' fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code § 12965(b).

## SECOND CAUSE OF ACTION

**Disability Discrimination**
**(California Government Code § 12940(a),** *et seq.*
**and American with Disabilities Act 42 U.S.C. § 12101,** *et seq.***))**

(Plaintiff Joseph Sample Against DEFENDANT CEMEX)

59. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

60. Plaintiff was at all times material hereto an employee covered by FEHA and the ADA.

61. CEMEX was at all times material hereto an employer within the meaning of the FEHA and ADA, and, as such, barred from discriminating in employment decisions on the basis of disability. Pursuant to Government Code § 12940(a), it is unlawful for an employer to discriminate against an employee because of the employee's disability.

62. Pursuant to Government Code §§ 12926 and 12926.1, Plaintiff has physical disabilities including a recognizable speech impediment, hearing loss, walks with a limp, high blood pressure, and required a mental health leave of absence due to the stress and torment he experienced at work. SAMPLE has a record of other physical disabilities and was perceived as or treated as having a physical disability by Defendant.

63. As such, Plaintiff is a "qualified individual." Defendant had notice of Plaintiff's ongoing

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

disabilities and requested reasonable accommodations including but not limited to requesting additional time to complete job duties, requesting additional leave as an accommodation and requesting on modifications to his job duties.

64. Plaintiff was is able to perform the essential functions of his job with or (at times) without reasonable accommodations for his disability. He has been performing these duties since his hiring.

65. Plaintiff has been subjected to ongoing discriminatory comments and jokes about his disability including but not limited to being called "retard" numerous times which have impacted the material terms, conditions and privileges and conditions of his employment, including but not limited to being subjected to suspension, actual termination, rehire, and threatened termination in material part because of his physical disability.

66. Plaintiff was harmed and Defendants' conduct was substantial factor in causing Plaintiff harm.

67. As a direct and proximate result of the unlawful conduct of discrimination by Defendant, Plaintiff has suffered and continues to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant.

68. As a further direct and proximate result of the unlawful conduct and discrimination by Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to his damage in an amount in excess of jurisdictional requirements and according to proof.

69. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

//

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

**THIRD CAUSE OF ACTION**

**Failure to Provide a Reasonable Accommodation**
**(California Government Code § 12940(m),** *et seq.*
**and Americans with Disabilities Act 42 U.S.C. § 12101,** *et seq.***))**

(Plaintiff Joseph Sample Against DEFENDANT CEMEX)

70. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

71. Plaintiff was at all times material hereto an employee covered by FEHA and the ADA.

72. Plaintiff has physical disabilities including a recognizable speech impediment, hearing loss, walks with a limp, high blood pressure, and required a mental health leave of absence due to the stress and torment he experienced at work. SAMPLE has a record of other physical disability and was perceived as or treated as having a physical disability by Defendant.

73. Plaintiff is a "qualified individual" and able to perform the essential functions of his job. DEFENDANT had notice of Plaintiff's ongoing disabilities and Plaintiff requested reasonable accommodations including but not limited to requesting additional time to complete job duties, requesting additional leave as an accommodation, and requesting on the job modifications to his job duties. He has been performing these duties since his hiring.

74. Defendant treated Plaintiff as if he had a disability including but not limited to providing him with a protected medical leave of absence under the Family Medical Leave Act ("FLMA") and ("CFRA").

75. While on a medical leave of absence, Defendant failed to provide SAMPLE additional leave as an accommodation as his medical note cleared him to return to work on May 8, 2025. In addition, Defendant failed to provide other accommodations upon request throughout his employment.

76. Plaintiff was harmed; and,

77. Defendant's failure to provide reasonable accommodations was a substantial factor in causing Plaintiff harm.

78. Defendant failed to provide Plaintiff with accommodations including but not limited to

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

additional time for a leave of absence, and additional time to complete his job duties when requested, and other on-the job accommodations as needed. At no time herein did Plaintiff request an indefinite leave of absence. Indeed, SAMPLE's doctor cleared him to return to work on or around May 8, 2025.

79. Plaintiff was harmed by Defendant's failure to provide reasonable accommodation.

80. As a direct and proximate result of the unlawful conduct by Defendant, Plaintiff has suffered and continues to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant.

81. As a further direct and proximate result of the unlawful conduct and discrimination by Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to his damage in an amount in excess of jurisdictional requirements and according to proof.

82. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

## FOURTH CAUSE OF ACTION

**Failure to Engage in the Interactive Process
(California Government Code § 12940(n), *et seq*.
and Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*.))**

(Plaintiff Joseph Sample Against DEFENDANT CEMEX)

83. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

84. Plaintiff was at all times material hereto an employee covered by FEHA and the ADA.

85. Plaintiff has physical disabilities including a recognizable speech impediment, hearing loss, walks with a limp, high blood pressure, and required a mental health leave of absence due

to the stress and torment he experienced at work. SAMPLE has a record of other physical disability and was perceived as or treated as having a physical disability by Defendant.

86. Plaintiff is a "qualified individual" and had a record of disabilities. DEFENDANT had notice of Plaintiff's ongoing disabilities and requested reasonable accommodations including but not limited to requesting additional time to complete job duties, requesting additional leave as an accommodation, and requesting on modifications to his job duties.

87. That Plaintiff requested multiple reasonable accommodation including but not limited to additional leave for his medical stress leave of absence and other on the job modifications.

88. All times herein Plaintiff did and was willing to participate in an interactive process to determine whether reasonable accommodation could be made that that he would be able to perform the essential job requirements.

89. That Defendant failed to participate in a timely-good faith interactive process with Plaintiff to determine whether reasonable accommodation when the interactive process should have taken place.

90. That Plaintiff was harmed.

91. That Defendant's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff harm.

92. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

93. As a direct and proximate result of the unlawful conduct by Defendant, Plaintiff has suffered and continues to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant.

94. As a further direct and proximate result of the unlawful conduct and discrimination by

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to his damage in an amount in excess of jurisdictional requirements and according to proof.

95. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

### FIFTH CAUSE OF ACTION

**Harassment and Hostile Work Environment
(California Gov. Code § § 12923, 12940(j))**

(FEHA Harassment by Plaintiff JOSEPH SAMPLE Against Defendants CEMEX, JOANNA PINE, DEMETRIUS HAWKINS and KIMBERLY LINTON)

(Hostile Work Environment Title VII, 42 U.S.C. § 1981 against Defendant CEMEX only)

96. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

97. The conduct of Defendants CEMEX, PINE, and HAWKINS and other employees at CEMEX created a hostile, intimidating, oppressive, and abusive work environment for Plaintiff, making conditions of his employment intolerable. Plaintiff was subjected to a hostile work environment due to almost daily racial derogatory comments including repeatedly being called the "N-word," "Retarded," "The retard," "Slow," "He's slow," "There is something wrong with him," "Dumb/Dummy," "Idiot," "Nigger,", "Stupid Nigger," "Jungle Bunny" and "Catfish." Indeed, Plaintiff was also consistently ridiculed about his disability and African American race.

98. Plaintiff was an employee of Defendants.

99. Defendants' conduct was unwelcome.

100. The harassment that Plaintiff endured was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a racially and disability discriminatorily

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

abusive and hostile work environment.

101. A reasonable African American and disabled person would have considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

102. Such harassment was sufficiently severe that it completely altered the terms and conditions of Plaintiff's employment, creating a hostile, abusive work environment and making his work conditions intolerable.

103. Plaintiff was harmed.

104. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

105. As a direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, with symptoms of anxiety, symptoms of depression, and sleep disturbances. Damages are in an amount in excess of jurisdictional requirements and according to proof.

106. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

107. Plaintiff incurred and continues to incur attorneys' fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code § 12965(b).

### SIXTH CAUSE OF ACTION
**Retaliation**
**(Title VII, 42 U.S.C. §1981; 42 U.S.C. § 2000e *et seq*., and FEHA; Cal. Gov. Code §12940 (h))**

(PLAINTIFF *JOSEPH SAMPLE* against Defendant *CEMEX*)

108. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

109. California Government Code §12940(h) provides that it is an unlawful employment practice for an employer or any other person to retaliate against an employee for opposing an unlawful employment practice, filing a complaint of discrimination or harassment, or for participating in any investigation or proceeding involving a claim of discriminatory treatment.

110. Plaintiff is informed and believes that Defendant CEMEX retaliated against Plaintiff for making multiple legally-protected complaints and filing the instant lawsuit while still employed with CEMEX. CEMEX also took a litany of adverse employment actions against Plaintiff including demotion, warning, suspension, and multiple terminations because of his legally-protected complaints. Specifically, Plaintiff opposed and reported unlawful discrimination and harassment based upon race and disability to both Human Resources and his Union.

111. Plaintiff's legally-protected complaints and the instant lawsuit was the substantial motivating reason for Defendant's litany of above-referenced actions including a recent wrongful and retaliatory termination.

112. The retaliation was so severe and/or pervasive as to alter the terms and conditions of Plaintiff's employment. A reasonable person in a similar situation would find the conduct offensive.

113. Plaintiff was harmed.

114. Defendant's decisions to mistreat, discharge, demote, terminate and other adverse actions were a substantial factor in causing Plaintiff harm.

115. The substantial or motivating reason for Defendant's act, actions, or conduct was Plaintiff's race, disability, and legally-protected complaints.

116. As a direct and proximate result of the unlawful conduct of discrimination by Defendant, Plaintiff suffered and continues to suffer damages, including but not limited to, medical expenses, loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received.

117. As a further direct and proximate result of the unlawful conduct and discrimination by Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment,

humiliation, mental anguish, and anxiety, all to damages in an amount in excess of jurisdictional requirements and according to proof.

118. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages.

119. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses and are also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code section 12965(b).

## SEVENTH CAUSE OF ACTION

### Retaliation in Violation of California Labor Code §1102.5 and SB 497
### (Whistle-Blower Statute)

(Plaintiff *JOSEPH SAMPLE* against Defendant *CEMEX*)

120. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

121. Defendant was Plaintiff's employer.

122. Plaintiff made a legally-protected complaint to Defendant's Human Resources about discrimination, harassment, and filed the instant lawsuit. Defendant failed to investigate, discover or correct Defendant's improper conduct and this conduct continues until this day.

123. Plaintiff is informed and believes that Defendant CEMEX retaliated against Plaintiff for exercising his clearly established rights. Plaintiff is further informed and believes that CEMEX took adverse employment actions against Plaintiff because of his participation in statutorily protected activity. Specifically, Plaintiff opposed and reported unlawful discrimination and harassment based upon race and disability to both Human Resources, management, and his Union and filed the instant lawsuit.

124. Plaintiff had reasonable cause to believe that his legally-protected complaint was disclosing a violation of state and federal laws by Defendant, their management, and employees.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Additionally, Plaintiff had reasonable cause to believe that his filing of the instant lawsuit was disclosing a violation of state and federal laws by Defendant, their management, and employees.

125. Defendant gave performance warnings, suspended, and conducted a litany of other adverse action against Plaintiff including multiple wrongful terminations.

126. Moreover, on February 24, 2025, CEMEX wrongfully terminated SAMPLE within less than ninety (90) days of making a legally-protected complaint on December 20, 2024. Indeed, there was only sixty-six (66) calendar days between SAMPLE's legally-protected complaint and his retaliatory and wrongful termination. CEMEX also immediately terminated SAMPLE's healthcare despite having just suffered a heart attack.

127. Plaintiff's legally-protected complaint and the instant lawsuit were contributing factors in Defendant's decision to alter the terms, conditions, and privileges of Plaintiff's employment.

128. Plaintiff was harmed.

129. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

130. Defendants maliciously, fraudulently, and oppressively committed the acts alleged herein with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights.

131. As a direct and proximate result of the unlawful conduct and discrimination by Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, with symptoms of anxiety, symptoms of depression, and sleep disturbances. Damages are in an amount in excess of jurisdictional requirements and according to proof.

## EIGHTH CAUSE OF ACTION

**Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA, Cal. Gov. Code § 12940(k),** *et seq.*

(Plaintiff *JOSEPH SAMPLE* against Defendant *CEMEX*)

132. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

133. Plaintiff was an employee of Defendant.

134. Plaintiff was subjected to harassment, discrimination and retaliation based upon race, disability and because of his legally-protected complaint and the instant lawsuit throughout his employment with Defendant. His employment was recently wrongfully terminated.

135. During Plaintiff's employment, Defendant failed to prevent the above-referenced actions of discrimination and retaliation, including but not limited to racial and disability discriminatory comments, and Plaintiff's wrongful and retaliatory termination.  Further, Defendant failed to complete a prompt and adequate investigation. Defendant was aware of, approved, and ratified this discrimination and retaliation.

136. Plaintiff was harmed.

137. Defendant's failure to take all reasonable steps to prevent harassment, discrimination, and retaliation was a substantial factor in causing Plaintiff's harm.

138. Defendants maliciously, fraudulently, and oppressively committed the acts alleged herein with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights.

139. As a direct and proximate result of the unlawful conduct and discrimination by Defendant, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, with symptoms of anxiety, symptoms of depression, and sleep disturbances. Damages are in an amount excess of jurisdictional requirements and according to proof.

### NINTH CAUSE OF ACTION
### 42 U.S.C. Section 1981

(PLAINTIFF *JOSEPH SAMPLE* against Defendant *CEMEX*)

140. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

141. Plaintiff alleges that Defendant has discriminated and retaliated against Plaintiff by treating him differently from and less preferably than similarly situated non-African-American employees and subjecting him to a hostile work environment and harassment, in violation of

Section 1981. But for his race, disability, legally-protected complaints, and the instant lawsuit Plaintiff would not have suffered any of the above-referenced adverse employment action against him.

142. Defendant's conduct has been disparate, intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

143. By reasons of the continuous nature of Defendants' discriminatory conduct, persistent throughout Plaintiff's employment and continuing to this day, Plaintiff is entitled to the application of the continuing violation doctrine to all of the violations alleged herein.

144. By reason of the discrimination suffered at Defendants' hands, Plaintiff is entitled to all legal and equitable remedies available under Section 1981.

## TENTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy
### California Government Code § 12940, *et seq*.

(PLAINTIFF Sample, Against DEFENDANT Cemex)

145. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

146. At all times herein, there was an employer/employee relationship between Plaintiff and Defendant.

147. Defendant terminated Plaintiff's employment because of his race, disability and legally-protected complaints. Collectively, these actions constitute unlawful conduct by Defendant.

148. Plaintiff's employment was terminated including on March 11, 2022, as a result of Defendant's violation of fundamental public policies. It is against fundamental California public policy, grounded in FEHA including, but not limited to, California Government Code section 12940(a) and other statutes, and complaining about practices made unlawful by FEHA. Plaintiff's complaint was also a substantial motivating reason for Plaintiff's termination.

149. Plaintiff was harmed by Defendant's conduct.

150. The above-described conduct of Defendant constitutes retaliation, and wrongful

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

termination of Plaintiff in violation of public policy embodied in FEHA, codified at California Government Code §§ 12900-12996, as well as Civil Code sections 51.7, 52.1, 52.4, and 1708.6, and the California Constitution, Article I, Section 8.

151. A tortious termination subjects the employer to "liability for compensatory and punitive damages under normal tort principles." *Gantt v. Sentry Insurance* (1992) 1 Cal. 4th 1083, 1101.

152. As a direct and proximate result of the unlawful conduct of retaliation by Defendant, Plaintiff has suffered and continues to suffer damages including but not limited to loss of wages, salary, benefits, and other employment benefits that Plaintiff would have received had he not been terminated by Defendant.

153. As a further direct and proximate result of the unlawful conduct and retaliation by Defendant, Plaintiff has suffered, and continues to suffer, emotional distress, embarrassment, mental anguish, and anxiety, all to his damage in an amount in excess of jurisdictional requirements and according to proof.

154. Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amount to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

## **PRAYER**

Wherefore, Plaintiff prays for judgment against Defendants CEMEX, JOANNA PINE, DEMETRIUS HAWKINS, and KIMBERLY LINTON

1. For past and future compensatory damages, according to proof;

2. For pre- and post-judgment interest at the legal rate;

3. For exemplary and punitive damages according to proof;

4. For additional economic losses and costs incurred by Plaintiff in establishing the claims against Defendants;

5. injunctive, equitable and declaratory relief;

6. Attorney's fees and costs of suit; and

7. For such other further relief the Court deems proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Date: May 12, 2025                           Respectfully submitted,


**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**

**BENTON EMPLOYMENT LAW**

/s/ *Chambord Benton-Hayes*

CHAMBORD BENTON-HAYES
ADANTE D. POINTER
ANGEL M. ALEXANDER
COUNSEL FOR PLAINTIFF

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 9, 2025

Angel Alexander
155 Filbert St., Suite 208
Oakland, CA 94607

RE:    **Notice to Complainant's Attorney**
CRD Matter Number: 202402-23563309
Right to Sue: Sample / CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC et al.

Dear Angel Alexander:

Attached is a copy of your **amended** complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq.

Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.  You or your client must serve the complaint.

The amended complaint is deemed to have the same filing date of the original complaint.  This is not a new Right to Sue letter.  The original Notice of Case Closure and Right to Sue issued in this case remains the only such notice provided by the CRD. (Cal. Code Regs., tit. 2, § 10022.)

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

SAMPLE 000504

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Joseph Sample                                          CRD No. 202402-23563309

                                        Complainant,

vs.

CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC
131 Stony Circle #500
Santa Rosa, CA 95401

DEMETRIUS HAWKINS



JOANNA PINE

                                        Respondents

_____

**1.** Respondent **CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **DEMETRIUS HAWKINS** individual as Co-Respondent(s). Complainant is naming **JOANNA PINE** individual as Co-Respondent(s).

**3.** Complainant **Joseph Sample**, resides in the City of **,** State of **.**

**4.** Complainant alleges that on or about **December 11, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's color, medical condition (cancer or genetic characteristic), other, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture).

-1-
*Complaint – CRD No. 202402-23563309*

Date Filed: February 8, 2024
Date Amended: May 9, 2025

CRD-ENF 80 RS (Revised 2025/02)

SAMPLE 000505

**Complainant was discriminated against** because of complainant's color, sex/gender, medical condition (cancer or genetic characteristic), other, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture) and as a result of the discrimination was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, suspended, demoted, other, denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint and as a result was terminated, reprimanded, suspended, demoted, other, denied or forced to transfer, denied accommodation for a disability.

**Additional Complaint Details:** *See attached Statment of Facts - (05092025 Update) *

-2-
*Complaint – CRD No. 202402-23563309*

Date Filed: February 8, 2024
Date Amended: May 9, 2025

CRD-ENF 80 RS (Revised 2025/02)

SAMPLE 000506

VERIFICATION

I, **Angel Alexander**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On May 9, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Oakland, California**

-3-
*Complaint – CRD No. 202402-23563309*

Date Filed: February 8, 2024
Date Amended: May 9, 2025

CRD-ENF 80 RS (Revised 2025/02)

SAMPLE 000507

<u>FACTUAL ALLEGATIONS</u>

*CEMEX*

Defendant CEMEX is a global building materials company and leading supplier of concrete and building materials. Defendant CEMEX is also one of the largest cement companies in the world. They have plants and facilities all over California.

### *Joseph SAMPLE – Disabled African American*

SAMPLE has been disabled since birth. He was born with congenital aural atresia (born without an ear canal) which is an outward manifestation of his brain never fully developing internally. His mother was very protective of him and worried about the bullying he would experience in his life. She instilled in him courage, strength, structure, and abundant love. Throughout his childhood and adolescence, he was always in special education. He struggled with reading and writing. It took him longer than other children to learn things. Children cruelly bullied him. Undeterred, he knew with the support of his family and God, he could accomplish anything he worked hard to achieve. He prayed for a successful life.

SAMPLE's family owned a popular soul food restaurant in San Francisco. He worked in their restaurant since he was a young child, which, he loved. Eventually SAMPLE wanted more. During a church service, he learned about CEMEX hiring cement truck drivers. It sounded like a great opportunity, so he applied.

### SAMPLE's Work Ethic is Unmatched

In or about August 2, 2017, SAMPLE was hired as a driver for Defendant CEMEX at its Antioch Ready-Mix Concrete Plant.

From August 2, 2017, to September 28, 2017, SAMPLE was on probation as a Ready Mix truck driver at Cemex. He failed his probationary period and was terminated. Undeterred, on or around May 15, 2018, he was re-hired and passed his probationary period as a Ready Mix driver. He and his family were proud of this accomplishment.

SAMPLE's work ethic is unmatched. He rarely missed days at work and many of those days he volunteered to work fourteen to sixteen hour shifts to help his team and support CEMEX. He is also a testament to all a disabled individual can accomplish if given the opportunity.

### SAMPLE is Relentlessly Harassed Because He is Disabled and Black; He Makes Legally-Protected Complaints But CEMEX Refuses to Investigate;

SAMPLE 000508

Because SAMPLE is disabled performing certain job duties at times take him longer. When frustrated, his speech might become impaired, and he has some diminished capacity of hearing on the right side. He also walks with a limp. Despite his visible disabilities, CEMEX never engaged him in the interactive process nor offered any accommodation(s). Instead, he was relentlessly harassed, taunted, and verbally abused by many of his co-workers including CEMEX managers.

Other employees corroborate that SAMPLE was regularly called "retarded" to his face and, more often, when he was not around. Other discriminatory comments of co-workers and manager included but were not limited to "he is slow," "dummy," "something's wrong with him," "his ears are small," and "he talks funny."

SAMPLE was also one of the few African American employees and, at one time, he was the only African American Ready Mix driver. The "N-word" was regularly used at both Concord and Antioch Plants, where SAMPLE worked, despite the lack of African American employees. SAMPLE was called the "N-word" several times by co-workers and supervisors. Co-workers also put a noose in the break room to scare SAMPLE in reference to historical lynching of African Americans. He lived in a daily nightmare where he was ridiculed for merely existing and trying to do his job.

When SAMPLE mustered the courage to repeatedly complain about this brutal harassment, HAWKINS (his Direct Manager), LINTON (Human Resources Business Partner "HRBP"), and PINE (Director of HR) refused to investigate. SAMPLE made legally-protected complaints in writing, in-person, and at grievance hearings. Instead of taking his legally-protected complaints seriously and conducting timely good faith investigation, HAWKINS, LINTON, and PINE initiated a campaign of retaliation.

### Cemex Cultivates an Environment Where Harassment  Is Not Only Tolerated but Encouraged

In early January of 2023, CEMEX took no corrective action against an employee(s) identified as falsely reporting to the California Department of Motor Vehicles ("DMV") that SAMPLE was an unfit driver. On or about January 3, 2022, the allegation resulted in the suspension of SAMPLE's commercial driver's license, leaving him unable to work and earn an income. SAMPLE applied for unemployment; however, the funds were not released until April 2, 2022, and SAMPLE was forced to sell his home in order to avoid foreclosure.

SAMPLE's licenses were eventually reinstated, and Plaintiff returned to work on or about February 25, 2022.

### *Defendants Retaliated and Terminated Plaintiff for Reporting Discrimination and Harassment*

On or about March 8, 2022, SAMPLE was involved in a minor traffic collision that involved

SAMPLE's work vehicle. Defendant CEMEX instructed Plaintiff to return his truck to the yard and go home while the incident was investigated.

Shortly thereafter, SAMPLE received a letter dated March 11, 2022, stating that he was terminated effective immediately because CEMEX had determined he was at fault for the accident.

CEMEX received the police report of the accident, dated March 15, 2022, which states that the officer at the scene could not determine fault.

Prior to receiving the notice of termination, SAMPLE was never given the opportunity to discuss the incident with CEMEX. He was, however, contacted several times by Michael Hughes, who told him that he should resign and find another job and that he would lose if he tried to take his termination to the ACA Board.
On or about May 16, 2022, the ACA Board of Adjustment granted Plaintiff's grievance hearing, ultimately reinstating Plaintiff to his former position.

### Sample Repeatedly Makes More Legally-Protected Complaints Which Cemex Refuses to Investigate; He Requires a Medical Stress Leave of Absence From Work

Commencing on or around July 17, 2024, due to the ongoing harassment, SAMPLE was taken off work by Sandra H. Smith Ph.D., Disability Specialist, and Psychologist. Dr. Smith notes specifically, "as the patient is not able to return to a regular job schedule, the patient is not able to perform any of his/her job functions at this time." SAMPLE's medical leave of absence was protected under CFRA/FMLA from July 17, 2024, through October 4, 2024.

During SAMPLE's stress medical leave of absence, CEMEX's HR (PINE, LINTON and others) relentlessly harassed SAMPLE via letters, email and text messages forcing him to submit additional documentation instead of allowing him to rest and recover. Indeed, SAMPLE had submitted the necessary notice that he required a medical leave as an accommodation.

On or around December 23, 2025 (two days before Christmas), SAMPLE was battling pneumonia. Despite disclosing this to LINTON, she continued to text SAMPLE requesting his medical notes. Also, on or around December 23, 2025, Sample made a legally-protected complaint, texting:

> I've been sick. Had pneumonia which you got the documents. Going to the doctor about the forms but I need time. **This is discrimination and harassment because I filed lawsuit and I am out on medical leave**. Please stop mistreating while I am out sick. (*emphasis added*)

LINTON responded:

SAMPLE 000510

Sample / CEMEX Concord Concrete Plant et al.
**Case #:** 202402-23563309
**Updated**: May 8, 2025

> "Good morning Joseph how much additional time are you needing in order to provide the documentation? To be clear, you have been asked to provide similar documentation since October 14. Thank you."

Despite this clear legally-protected complaint, human resources refused to investigate SAMPLE's complaints.

SAMPLE's medical leave was extended by Dr. Smith until May 8, 2025. As such, SAMPLE required further leave as a reasonable accommodation. SAMPLE intended to return to work on May 8, 2025 (Dr. Smith would clear him to do so) and complete his Department of Transportation clearance on or before May 17, 2025.

Despite SAMPLE's plans to return to work, CEMEX had other plans for him. On February 11, 2025, CEMEX sent a letter to SAMPLE threating him with "voluntary job abandonment." On February 12, 2025, SAMPLE interpreted CEMEX's letter to mean that he was being terminated. Terrified of losing his job, medical insurance, and livelihood, SAMPLE had a heart attack, stayed two days in the hospital, and required placement of a stint.

On February 20, 2025, counsel for SAMPLE reached out to opposing counsel providing the medical note again and advising them that "my client has a serious medical condition that requires accommodation."

On February 24, 2025, Cemex wrongfully terminated SAMPLE within less than ninety (90) days of making a legally-protected complaint on December 20, 2024. Indeed, there were only sixty-six (66) calendar days between SAMPLE's legally-protected complaint and his retaliatory and wrongful termination. CEMEX also immediately terminated SAMPLE's healthcare despite his having just suffered a heart attack.

On or around May 8, 2025, SAMPLE's doctor cleared him to return to work. Indeed, SAMPLE's medical leave of absence was not indefinite.

### *For Years, SAMPLE Endured a Hostile, Intimidating, Offensive, Oppressive, and Abusive Work Environment*

In 2017, SAMPLE's trainer referenced "your Black Ass" on several occasions.
In 2019, Laura Larson told Plaintiff several times, "N* won't you just quit?"
In 2020-2021, James "Jim" Hazen told him one time,

- "It's always that jungle bunny N* that fucked up."
- James "Jim" Hazen called him Monkey at least two times.

In 2021 David Holdren said, "I want that monkey dog looking motherfucker's job."
- James "Jim" Hazen said "Man, We could drop a load on his ass and be done with the N*"
- Kimberly Linton said, "Technically and as history reflects, maybe you are what

you seem to be so offended by, and you just need to loosen up and go with it."

In 2021-2022, James "Jim" Hazen told him,
- "They should've killed your monkey ass when you were born, you chittering, shit-eating motherfucker."

In 2022, Demetrius Hawkins said,
- "None of your co-workers like you, but there are two of them I know for a fact that hates you and has turned most of them against you. You're not getting the transfer, and just so you know, I don't like you either, now get out of here and do your job."
- "There is no race discrimination directed at me, so you must be the problem."

Throughout his employment, Plaintiff was also called by drivers, co-workers and even managers:
- "Retarded";
- "The retard";
- "Slow";
- "He's slow";
- "There is something wrong with him";
- "Dumb/Dummy";
- "Idiot";
- "Nigger"'
- "Stupid Nigger"
- "Jungle Bunny"
- "Catfish"

SAMPLE filed multiple complaints with HR personnel, including Defendant PINE, LINTON and with Plant Manager Defendant HAWKINS. Defendants failed to take Plaintiff's complaints seriously and conduct a timely, good faith investigation. Said duties are ongoing. In fact, Defendants responded to Plaintiff's complaint of racial and disability discrimination and harassment *with* additional racial and disability discrimination, harassment, retaliation, and a litany of other ongoing adverse actions.

SAMPLE filed multiple grievances of racial and disability discrimination and hostile work environment with Teamsters Local Union No. 315 ("Union"), Business Agent Michael Hughes told Plaintiff, "You are becoming a problem for the company, and we are tired of you causing havoc with your complaints about the workers lying on you and trying to make you lose your job as well as calling you the "N" word and this jungle bunny mess." Hughes then informed Plaintiff that he would not represent Plaintiff if he continued to pursue his grievances. SAMPLE was reinstated after termination multiple times.

# EXHIBIT B

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 12, 2025

Angel Alexander

██████████████████████

████████████████

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202402-23563309
        Right to Sue: Sample / CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC et
        al.

Dear Angel Alexander:

Attached is a copy of your **amended** complaint of discrimination filed with the Civil
Rights Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq.

Pursuant to Government Code section 12962, CRD will not serve these documents on
the employer.  You or your client must serve the complaint.

The amended complaint is deemed to have the same filing date of the original
complaint.  This is not a new Right to Sue letter.  The original Notice of Case Closure
and Right to Sue issued in this case remains the only such notice provided by the CRD.
(Cal. Code Regs., tit. 2, § 10022.)

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

SAMPLE 000513

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Joseph Sample                                          CRD No. 202402-23563309

                                    Complainant,

vs.

CEMEX CONSTRUCTION MATERIALS PACIFIC,
LLC
131 Stony Circle #500
Santa Rosa, CA 95401

DEMETRIUS HAWKINS



JOANNA PINE



Kimberly Linton

                                    Respondents

_____

**1.** Respondent **CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **DEMETRIUS HAWKINS** individual as Co-Respondent(s).
Complainant is naming **JOANNA PINE** individual as Co-Respondent(s).
Complainant is naming **Kimberly Linton** individual as Co-Respondent(s).

**3**. Complainant **Joseph Sample**, resides in the City of **,** State of **.**

-1-
*Complaint – CRD No. 202402-23563309*

Date Filed: February 8, 2024
Date Amended: May 12, 2025

CRD-ENF 80 RS (Revised 2025/02)

SAMPLE 000514

**4**. Complainant alleges that on or about **December 11, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's color, medical condition (cancer or genetic characteristic), other, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture).

**Complainant was discriminated against** because of complainant's color, sex/gender, medical condition (cancer or genetic characteristic), other, disability (physical, intellectual/developmental, mental health/psychiatric), race (includes hairstyle and hair texture) and as a result of the discrimination was terminated, laid off, forced to quit, denied hire or promotion, reprimanded, suspended, demoted, other, denied work opportunities or assignments, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint and as a result was terminated, reprimanded, suspended, demoted, other, denied or forced to transfer, denied accommodation for a disability.

**Additional Complaint Details:** *See attached Statment of Facts - (05092025 Update) *

-2-
*Complaint – CRD No. 202402-23563309*

Date Filed: February 8, 2024
Date Amended: May 12, 2025

CRD-ENF 80 RS (Revised 2025/02)

SAMPLE 000515

VERIFICATION

I, **Angel Alexander**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On May 12, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**California**

-3-
*Complaint – CRD No. 202402-23563309*

Date Filed: February 8, 2024
Date Amended: May 12, 2025

CRD-ENF 80 RS (Revised 2025/02)

SAMPLE 000516

## FACTUAL ALLEGATIONS

*CEMEX*

Defendant CEMEX is a global building materials company and leading supplier of concrete and building materials. Defendant CEMEX is also one of the largest cement companies in the world. They have plants and facilities all over California.

*Joseph SAMPLE – Disabled African American*

SAMPLE has been disabled since birth. He was born with congenital aural atresia (born without an ear canal) which is an outward manifestation of his brain never fully developing internally. His mother was very protective of him and worried about the bullying he would experience in his life. She instilled in him courage, strength, structure, and abundant love. Throughout his childhood and adolescence, he was always in special education. He struggled with reading and writing. It took him longer than other children to learn things. Children cruelly bullied him. Undeterred, he knew with the support of his family and God, he could accomplish anything he worked hard to achieve. He prayed for a successful life.

SAMPLE's family owned a popular soul food restaurant in San Francisco. He worked in their restaurant since he was a young child, which, he loved. Eventually SAMPLE wanted more. During a church service, he learned about CEMEX hiring cement truck drivers. It sounded like a great opportunity, so he applied.

### SAMPLE's Work Ethic is Unmatched

In or about August 2, 2017, SAMPLE was hired as a driver for Defendant CEMEX at its Antioch Ready-Mix Concrete Plant.

From August 2, 2017, to September 28, 2017, SAMPLE was on probation as a Ready Mix truck driver at Cemex. He failed his probationary period and was terminated. Undeterred, on or around May 15, 2018, he was re-hired and passed his probationary period as a Ready Mix driver. He and his family were proud of this accomplishment.

SAMPLE's work ethic is unmatched. He rarely missed days at work and many of those days he volunteered to work fourteen to sixteen hour shifts to help his team and support CEMEX. He is also a testament to all a disabled individual can accomplish if given the opportunity.

### SAMPLE is Relentlessly Harassed Because He is Disabled and Black; He Makes Legally-Protected Complaints But CEMEX Refuses to Investigate;

SAMPLE 000517

Because SAMPLE is disabled performing certain job duties at times take him longer. When frustrated, his speech might become impaired, and he has some diminished capacity of hearing on the right side. He also walks with a limp. Despite his visible disabilities, CEMEX never engaged him in the interactive process nor offered any accommodation(s). Instead, he was relentlessly harassed, taunted, and verbally abused by many of his co-workers including CEMEX managers.

Other employees corroborate that SAMPLE was regularly called "retarded" to his face and, more often, when he was not around. Other discriminatory comments of co-workers and manager included but were not limited to "he is slow," "dummy," "something's wrong with him," "his ears are small," and "he talks funny."

SAMPLE was also one of the few African American employees and, at one time, he was the only African American Ready Mix driver. The "N-word" was regularly used at both Concord and Antioch Plants, where SAMPLE worked, despite the lack of African American employees. SAMPLE was called the "N-word" several times by co-workers and supervisors. Co-workers also put a noose in the break room to scare SAMPLE in reference to historical lynching of African Americans. He lived in a daily nightmare where he was ridiculed for merely existing and trying to do his job.

When SAMPLE mustered the courage to repeatedly complain about this brutal harassment, HAWKINS (his Direct Manager), LINTON (Human Resources Business Partner "HRBP"), and PINE (Director of HR) refused to investigate. SAMPLE made legally-protected complaints in writing, in-person, and at grievance hearings. Instead of taking his legally-protected complaints seriously and conducting timely good faith investigation, HAWKINS, LINTON, and PINE initiated a campaign of retaliation.

### Cemex Cultivates an Environment Where Harassment  Is Not Only Tolerated but Encouraged

In early January of 2023, CEMEX took no corrective action against an employee(s) identified as falsely reporting to the California Department of Motor Vehicles ("DMV") that SAMPLE was an unfit driver. On or about January 3, 2022, the allegation resulted in the suspension of SAMPLE's commercial driver's license, leaving him unable to work and earn an income. SAMPLE applied for unemployment; however, the funds were not released until April 2, 2022, and SAMPLE was forced to sell his home in order to avoid foreclosure.

SAMPLE's licenses were eventually reinstated, and Plaintiff returned to work on or about February 25, 2022.

### *Defendants Retaliated and Terminated Plaintiff for Reporting Discrimination and Harassment*

On or about March 8, 2022, SAMPLE was involved in a minor traffic collision that involved

SAMPLE's work vehicle. Defendant CEMEX instructed Plaintiff to return his truck to the yard and go home while the incident was investigated.

Shortly thereafter, SAMPLE received a letter dated March 11, 2022, stating that he was terminated effective immediately because CEMEX had determined he was at fault for the accident.

CEMEX received the police report of the accident, dated March 15, 2022, which states that the officer at the scene could not determine fault.

Prior to receiving the notice of termination, SAMPLE was never given the opportunity to discuss the incident with CEMEX. He was, however, contacted several times by Michael Hughes, who told him that he should resign and find another job and that he would lose if he tried to take his termination to the ACA Board.

On or about May 16, 2022, the ACA Board of Adjustment granted Plaintiff's grievance hearing, ultimately reinstating Plaintiff to his former position.

### Sample Repeatedly Makes More Legally-Protected Complaints Which Cemex Refuses to Investigate; He Requires a Medical Stress Leave of Absence From Work

Commencing on or around July 17, 2024, due to the ongoing harassment, SAMPLE was taken off work by Sandra H. Smith Ph.D., Disability Specialist, and Psychologist. Dr. Smith notes specifically, "as the patient is not able to return to a regular job schedule, the patient is not able to perform any of his/her job functions at this time." SAMPLE's medical leave of absence was protected under CFRA/FMLA from July 17, 2024, through October 4, 2024.

During SAMPLE's stress medical leave of absence, CEMEX's HR (PINE, LINTON and others) relentlessly harassed SAMPLE via letters, email and text messages forcing him to submit additional documentation instead of allowing him to rest and recover. Indeed, SAMPLE had submitted the necessary notice that he required a medical leave as an accommodation.

On or around December 23, 2025 (two days before Christmas), SAMPLE was battling pneumonia. Despite disclosing this to LINTON, she continued to text SAMPLE requesting his medical notes. Also, on or around December 23, 2025, Sample made a legally-protected complaint, texting:

> I've been sick. Had pneumonia which you got the documents. Going to the doctor about the forms but I need time. **This is discrimination and harassment because I filed lawsuit and I am out on medical leave**. Please stop mistreating while I am out sick. (*emphasis added*)

LINTON responded:

> "Good morning Joseph how much additional time are you needing in order to provide the documentation? To be clear, you have been asked to provide similar documentation since October 14. Thank you."

Despite this clear legally-protected complaint, human resources refused to investigate SAMPLE's complaints.

SAMPLE's medical leave was extended by Dr. Smith until May 8, 2025. As such, SAMPLE required further leave as a reasonable accommodation. SAMPLE intended to return to work on May 8, 2025 (Dr. Smith would clear him to do so) and complete his Department of Transportation clearance on or before May 17, 2025.

Despite SAMPLE's plans to return to work, CEMEX had other plans for him. On February 11, 2025, CEMEX sent a letter to SAMPLE threating him with "voluntary job abandonment." On February 12, 2025, SAMPLE interpreted CEMEX's letter to mean that he was being terminated. Terrified of losing his job, medical insurance, and livelihood, SAMPLE had a heart attack, stayed two days in the hospital, and required placement of a stint.

On February 20, 2025, counsel for SAMPLE reached out to opposing counsel providing the medical note again and advising them that "my client has a serious medical condition that requires accommodation."

On February 24, 2025, Cemex wrongfully terminated SAMPLE within less than ninety (90) days of making a legally-protected complaint on December 20, 2024. Indeed, there were only sixty-six (66) calendar days between SAMPLE's legally-protected complaint and his retaliatory and wrongful termination. CEMEX also immediately terminated SAMPLE's healthcare despite his having just suffered a heart attack.

On or around May 8, 2025, SAMPLE's doctor cleared him to return to work. Indeed, SAMPLE's medical leave of absence was not indefinite.

### *For Years, SAMPLE Endured a Hostile, Intimidating, Offensive, Oppressive, and Abusive Work Environment*

In 2017, SAMPLE's trainer referenced "your Black Ass" on several occasions.
In 2019, Laura Larson told Plaintiff several times, "N* won't you just quit?"
In 2020-2021, James "Jim" Hazen told him one time,

- "It's always that jungle bunny N* that fucked up."
- James "Jim" Hazen called him Monkey at least two times.

In 2021 David Holdren said, "I want that monkey dog looking motherfucker's job."
- James "Jim" Hazen said "Man, We could drop a load on his ass and be done with the N*"
- Kimberly Linton said, "Technically and as history reflects, maybe you are what

you seem to be so offended by, and you just need to loosen up and go with it."

In 2021-2022, James "Jim" Hazen told him,

- "They should've killed your monkey ass when you were born, you chittering, shit-eating motherfucker."

In 2022, Demetrius Hawkins said,

- "None of your co-workers like you, but there are two of them I know for a fact that hates you and has turned most of them against you. You're not getting the transfer, and just so you know, I don't like you either, now get out of here and do your job."
- "There is no race discrimination directed at me, so you must be the problem."

Throughout his employment, Plaintiff was also called by drivers, co-workers and even managers:

- "Retarded";
- "The retard";
- "Slow";
- "He's slow";
- "There is something wrong with him";
- "Dumb/Dummy";
- "Idiot";
- "Nigger"'
- "Stupid Nigger"
- "Jungle Bunny"
- "Catfish"

SAMPLE filed multiple complaints with HR personnel, including Defendant PINE, LINTON and with Plant Manager Defendant HAWKINS. Defendants failed to take Plaintiff's complaints seriously and conduct a timely, good faith investigation. Said duties are ongoing. In fact, Defendants responded to Plaintiff's complaint of racial and disability discrimination and harassment *with* additional racial and disability discrimination, harassment, retaliation, and a litany of other ongoing adverse actions.

SAMPLE filed multiple grievances of racial and disability discrimination and hostile work environment with Teamsters Local Union No. 315 ("Union"), Business Agent Michael Hughes told Plaintiff, "You are becoming a problem for the company, and we are tired of you causing havoc with your complaints about the workers lying on you and trying to make you lose your job as well as calling you the "N" word and this jungle bunny mess." Hughes then informed Plaintiff that he would not represent Plaintiff if he continued to pursue his grievances. SAMPLE was reinstated after termination multiple times.

# EXHIBIT C



# DISABILITY COUNSELING SERVICES INC.

Sandra H. Smith, Ph.D.
CA State License #PSY6511
1300 Clay Street, Ste 600, 6th Flr.
Oakland, CA 94612
Phone: 510-450-1800  Fax:510-645-1577

## Release to Return To Work

Date: __4/17/25__

To whom it may concern,

This is to certify that: ___Joseph Sample___ has been under our care and has received treatment for his/her condition.

This patient has shown improvement after treatment and is ready to be released to return to work on: ___5/8/25___

☐ With the following accommodations: _____

_____

☑ Without any accommodations, effective: ___5/8/25___.

Respectfully,

*Sandratt Smith PhD*

Sandra H. Smith, Ph.D.
Disability Specialist
PSY6511

cc: Patient File

SAMPLE 000522

## KAISER PERMANENTE®

**This form contains your diagnosis.**

SUNDARAMOORTHY, MATHURAN (M.D.)
1721 W. YOSEMITE AVE.
MANTECA CA 95337-5130
824-5051X0000

Patient Name: Sample,Joseph Jr.
Encounter Date: 5/7/2025
Auth ID: 32624583472.1

Please see below for this health care provider's directives and information relating to this encounter.

# Work Status Report

**Diagnosis:** HX OF NON ST ELEVATION MI (NSTEMI), UNSPECIFIED TYPE; CAD WO ANGINA, W HX OF MI

**Full Duty:**

The patient was evaluated and deemed able to return to work at full capacity on 5/7/2025.

This form has been electronically signed by SUNDARAMOORTHY, MATHURAN (M.D.)

*This form contains your private health information that you may choose to release to another party, therefor please review for accuracy.*

SAMPLE 000523