HANSON BRIDGETT LLP
DOROTHY S. LIU, SBN 196369
DLiu@hansonbridgett.com
AREZOO JAMSHIDI, SBN 284220
AJamshidi@hansonbridgett.com
PATRICK BURNS, SBN 300219
PBurns@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777-3200
Facsimile:     (415) 541-9366

*Attorneys for Defendant*
CEMEX Construction Materials Pacific, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH SAMPLE, JR.<br><br>    Plaintiff,<br><br>    v.<br><br>CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC<br><br>    Defendant. | Case No. 3:23-cv-00428-WHO<br><br>**DEFENDANT CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      June 10, 2026<br>Time:      2:00 p.m.<br>Dept.:     Courtroom 2 – 17th Floor<br>Judge:     Hon. William H. Orrick |

Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 10, 2026, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable William H. Orrick, located at 450 Golden Gate Avenue, Courtroom 2 – 17th Floor, San Francisco, CA 94102, Defendant Cemex Construction Materials Pacific, LLC ("Cemex") will move and hereby does move, this Court pursuant to Federal Rules of Civil Procedure 50 and 59 for an order granting judgment as a matter of law, a new trial and/or remittitur as to Plaintiff Joseph Sample, Jr.'s claims for: hostile work environment under Title VII and hostile work environment under the California Fair Employment and Housing Act.

An order granting judgment as a matter of law is appropriate because Plaintiff failed to present legally sufficient evidence of actionable harassment occurring within the applicable statute of limitations, failed to establish that any Cemex supervisor knew or should have known of protected-class harassment during that period, and because the jury was permitted—without guidance on the statute of limitations or the continuing violations doctrine—to base liability on the conduct and knowledge of a supervisor whose tenure undisputedly fell outside the limitations period.

An order granting a new trial is appropriate because the jury was not instructed on the statute of limitations or the continuing violations doctrine and was permitted during deliberations to consider time-barred supervisory conduct as a basis for liability, resulting in a verdict that cannot be reconciled with the governing legal framework.

An order granting a new trial or remittitur is also appropriate because the $5 million compensatory damages award is grossly excessive and unsupported by the weight of the evidence, including the limited proof of the severity, duration, and causation of Plaintiff's emotional distress, and substantially exceeds awards sustained in comparable cases.

The motion for new trial is sought as to liability and compensatory damages only; the jury's denial of awarding punitive damages should not be part of a re-trial.

This Motion is based on the memorandum of points and authorities, the Declaration of Dorothy S. Liu filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that

may be presented to or considered by the Court prior to its ruling.

DATED: May 1, 2026                                    HANSON BRIDGETT LLP


By: _____/s/ Patrick Burns_____
                                    DOROTHY S. LIU
                                    AREZOO JAMSHIDI
                                    PATRICK BURNS
                                    JOSUE R. APARICIO

                              Attorneys for Defendant CEMEX Construction
                                    Materials Pacific, LLC

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.      INTRODUCTION.............................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND......................................................2

       A.     Plaintiff's Claims Were Limited to Conduct Occurring After February 8, 2021..................................................................................................................2

       B.     Plaintiff's Allegations Involving Larson Pre-Date the Limitations Period...............3

       C.     There Was No Evidence of Harassment Within the Limitations Period....................4

             1.     Conduct alleged without reference to a date, timeframe or year...................4

             2.     Pre-February 8, 2021 conduct (i.e. outside the limitations period)...............5

             3.     Post-February 8, 2021 conduct (i.e. within the limitations period)...............6

       D.     At Trial, Plaintiff Presented Limited Evidence of his Emotional Distress. ..............7

       E.     The Court's Jury Instructions and Verdict Form Omitted Any Limitations or Continuing-Violations Instruction and Findings Over Defendant's Objections..................................................................................................................8

       F.     The Jury's Question and Resulting Verdict Confirm the Prejudicial Impact of the Instructional and Verdict Form Errors. ..........................................................10

III.    LEGAL STANDARD ......................................................................................................11

IV.     ARGUMENT ...................................................................................................................11

       A.     Cemex Is Entitled to JMOL or, at a Minimum, a New Trial on Liability................11

             1.     Plaintiff had the burden of pleading and proving timely filing under the statute of limitations and the application of the continuing violations doctrine. .......................................................................................11

             2.     This Court removed the statute of limitations and continuing violations issues from the jury, relieved Plaintiff of his burden and denied Cemex its statute of limitations defense. .........................................14

             3.     The jury's question and the erroneous answer indicate it did not find supervisor knowledge within the limitations period and therefore Cemex is entitled to judgment as a matter of law. .....................................15

             4.     At minimum, the Court's failure to provide the jury with instructions on the statute of limitations and continuing violations was legally erroneous and warrants a new trial...........................................16

       B.     This Court Should Grant a New Trial Where Plaintiff Failed to Present Sufficient Evidence of Harassment and Supervisory-Knowledge Within the

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

Limitations Period. ..................................................................................16

C.     The Compensatory Damages Award Is Excessive and Not Supported by the Weight of the Evidence; the Court Should Therefore Order a New Trial or Remit the Damages to $150,000. ...............................................18

     1.     Noneconomic damages awards for workplace harassment exceeding $1 million are rare and only permitted when there is sufficient evidence of the severity and duration of the plaintiff's mental anguish. ..........................................................................19

     2.     Plaintiff did not present sufficient evidence of the severity and duration of his harm, or its causation, to justify an award at the staggering amount of $5 million. ..........................................21

D.     Any Order Granting New Trial Should Be Limited to Liability and Damages Occurring within the Limitations Period. .....................................25

V.     CONCLUSION ................................................................................25

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Claiborne v. Blauser*,
934 F.3d 885 (9th Cir. 2019) ............................................................................................... 11

*Crowley v. Epicept Corp.*,
883 F.3d 739 (9th Cir. 2018) ............................................................................................... 16

*Dang v. Cross*,
422 F.3d 800 (9th Cir.2005) ................................................................................................ 14

*Diaz v. Tesla, Inc.*,
598 F. Supp. 3d 809 (N.D. Cal. 2022) ..........................................................................*passim*

*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*,
397 F.3d 1300 (10th Cir. 2005) ........................................................................................... 13

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
762 F.3d 829 (9th Cir. 2014) ............................................................................................... 11

*Gray v. Imperial Pac. Int'l (CNMI), LLC*,
No. 1:19-CV-00008, 2023 WL 3714156 (D. N. Mar. I. May 30, 2023) .................... 20, 21, 25

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) ............................................................................................. 21

*Lawson v. PPG Indus., Inc.*,
No. 8:18-CV-00705-JVS-JPR, 2025 WL 2493767 (C.D. Cal. Aug. 13, 2025) .......... 20, 21, 25

*Millenkamp v. Davisco Foods Int'l, Inc.*,
562 F.3d 971 (9th Cir. 2009) ............................................................................................... 16

*Murphy v. City of Long Beach*,
914 F.2d 183 (9th Cir. 1990) ............................................................................................... 16

*National Railroad Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ............................................................................................................. 13

*Oracle Corp. v. SAP AG*,
765 F.3d 1081 (9th Cir. 2014) ............................................................................................. 11

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*,
212 F.3d 493 (9th Cir. 2000) ............................................................................................... 21

*Paul v. Asbury Auto. Grp., LLC*,
No. CIV.06-1603-KI, 2009 WL 188592 (D. Or. Jan. 23, 2009) ...................................*passim*

iii                                                 Case No. 3:23-cv-00428-WHO

*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*,
422 F.3d 949 (9th Cir. 2005) ................................................................................ 25

*Porter v. California Dep't of Corr.*,
419 F.3d 885 (9th Cir. 2005) ................................................................................ 13

*Robbins v. Aleutian Queen Seafood, Inc.*,
15 F.3d 1089 (9th Cir. 1994) ............................................................................... 25

*Scott v. Gino Morena Enterprises, LLC*,
888 F.3d 1101 (9th Cir. 2018) ............................................................................. 12

*Shafer v. Cnty. of Santa Barbara*,
868 F.3d 1110 (9th Cir. 2017) ....................................................................... 11, 16

*Shaw v. United States*,
741 F.2d 1202 (9th Cir. 1984) ............................................................................. 19

*Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Local No. 287*,
175 F.3d 680 (9th Cir. 1999) ............................................................................... 18

*Sooroojballie v. Port Auth. of New York & New Jersey*,
816 F. App'x 536 (2d Cir. 2020) .............................................................. 20, 21, 25

*Stuart v. Local 727, Int'l Brotherhood of Teamsters*,
771 F.3d 1014 (7th Cir. 2014) ............................................................................. 12

*Turley v. ISG Lackawanna, Inc.*,
774 F.3d 140 (2d Cir. 2014) ..................................................... 20, 21, 24, 25

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) ............................................................................. 11

*Velez v. Roche*,
335 F. Supp. 2d 1022 (N.D. Cal. 2004) ............................................................... 19

*Watec Co. v. Liu*,
403 F.3d 645 (9th Cir. 2005) ............................................................................... 19

*Watson v. City of San Jose*,
800 F.3d 1135 (9th Cir. 2015) ....................................................................... 11, 23

**State Cases**

*Brome v. California Highway Patrol*,
44 Cal. App .5th 786, 799 (2020) ........................................................................ 12

*Hoglund v. Sierra Nevada Memorial-Miners Hosp.*,
102 Cal. App. 5th 56 (2024) ................................................................................ 13

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

*Jumaane v. City of Los Angeles*,
  241 Cal. App. 4th 1390 (2015)........................................................................................ 12, 14

*Kim v. Konad USA Distribution, Inc.*,
  226 Cal. App. 4th 1336 (2014)........................................................................................ 12, 14

*Richards v. CH2M Hill, Inc.*,
  26 Cal. 4th 798 (2001)..................................................................................................... 12, 17

*Yanowitz v. L'Oreal USA, Inc.*,
  36 Cal. 4th 1028 (2005)................................................................................................... 12, 17

**Federal Statutes**

42 U.S.C. § 1981 ..................................................................................................................2, 11

42 U.S.C. § 2000e-5(e)(1) ................................................................................................. 12, 17

42 U.S.C. § 2000e-5(f)(1) ...................................................................................................... 12

1964 Civil Rights Act Title VII (42 U.S.C. § 2000e et seq.) ...................................................*passim*

**State Statutes**

Cal. Gov't Code § 12960(e)(3) ........................................................................................... 11, 17

**Rules**

FRCP 50 ................................................................................................................................ 1, 11

FRCP 59 ................................................................................................................................ 1, 11

**Other Authorities**

CACI No. 2508 ........................................................................................................................ 14

Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case turned on a question the jury was never asked to answer: whether Plaintiff Joseph Sample Jr. ("Plaintiff") proved evidence of harassment and whether a supervisor of Defendant CEMEX Construction Materials Pacific, LLC ("Cemex") knew or should have known of such harassment within the statute of limitations period. Instead, after hearing extensive evidence about events that undisputedly pre-dated the limitations period, the jury was allowed to base liability on conduct alleged to have occurred years earlier. The result was a verdict that cannot be reconciled with the governing law, the trial record, or the basic requirements of fairness.

This motion seeks posttrial relief on three independent grounds. First, Plaintiff had the burden of proving that the alleged harassment occurred within the limitations period and that the continuing violations doctrine applied. The jury, however, was not instructed on either of these issues, which relieved Plaintiff of his burden and denied Cemex its statute of limitations defense. This error was compounded by a modification made during deliberations to the jury instruction defining "supervisor." The Court instructed the jury that it could treat Laura Larson—who undisputedly supervised Plaintiff only outside the limitations period—as a "supervisor" and basis for liability. The lack of an instruction on the statute of limitations and continuing violations, as well as the modification of the jury instructions to define Larson as a "supervisor," ultimately resolved a critical disputed issue in Plaintiff's favor and proved outcome determinative. As such, Cemex is entitled to judgment as a matter of law or, at a minimum, a new trial.

Second, Cemex is entitled to judgment as a matter of law because Plaintiff failed to present legally sufficient evidence of a hostile work environment occurring within the applicable limitations period, much less evidence that any Cemex supervisor knew or should have known of actionable harassment during that period. As set forth below, the trial evidence shows that Plaintiff's most explicit allegations of racial harassment were tied to conduct that occurred no later than 2020—well before the February 8, 2021 limitations cutoff. The evidence offered for the post limitations period involved workplace conflict, safety issues, and interpersonal disputes, not race or disability based harassment. The only supervisors whose knowledge could support employer liability during the

1                                               Case No. 3:23-cv-00428-WHO

limitations period testified that Plaintiff did not report protected class harassment to them.

Third, the jury's $5 million noneconomic damages award is grossly excessive and unsupported by the weight of the evidence, particularly given the limited proof of severity, duration, and causation of Plaintiff's emotional distress. Plaintiff presented no medical records corroborating significant or lasting psychological injury, identified multiple, significant non work related events contributing to his distress, and offered only generalized testimony regarding the nature and extent of his harm. In light of comparable workplace harassment cases, the award is an extreme outlier that cannot be sustained and independently warrants a new trial or substantial remittitur.

Accordingly, the Court should enter judgment as a matter of law in Cemex's favor. At a minimum, the Court should order a new trial on liability and compensatory damages or remit the damages award to the maximum amount sustainable by the evidence.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Claims Were Limited to Conduct Occurring After February 8, 2021.

Plaintiff asserted claims against Cemex for hostile work environment under Title VII, hostile work environment under the California Fair Employment and Housing Act ("FEHA"), and race discrimination under 42 U.S.C. section 1981. Dkt. No. 105 at 2, 16–17, 21–22. The gravamen of Plaintiff's case was that he was subjected to harassing conduct by coworkers, and that Cemex was liable because its management knew or should have known of the alleged harassment and failed to take appropriate remedial action. *Id.* at 2–9, 16–17, 21–22.

From the outset of the case—including at summary judgment and in motions in limine—Cemex consistently disputed Plaintiff's ability to rely on alleged conduct occurring outside the applicable limitations period. Dkt. No. 121 at 26–27; Dkt. No. 187 at 8–15. Cemex moved for summary judgment arguing that Plaintiff's harassment claims under Title VII and FEHA are untimely because the alleged conduct fell outside of the limitations period. Dkt. No. 121 at 26–27. The FEHA limitations cutoff date was February 8, 2021 and the Title VII claim was April 14, 2023. Cemex argued that Plaintiff could not base liability on earlier, time-barred allegations absent satisfaction of the continuing violations doctrine. *Id.* The Court denied Cemex's summary judgment, determining that the continuing violations doctrine applies and there are triable issues as to whether

2                                                      Case No. 3:23-cv-00428-WHO

Cemex knew or should have known about the alleged actions. Dkt. No. 175 at 22–23.

Cemex also moved in limine to exclude evidence, testimony and argument regarding alleged harassing conduct that occurred before February 8, 2021. Dkt. No. 187 at 8–15. Cemex addressed the standard for the continuing violations doctrine under both state and federal law and argued that Plaintiff could not meet either standard. *Id*. at 8, 13–14. Specifically, Cemex argued that any allegations regarding plant manager Larson (who stopped being Plaintiff's manager in April 2020) and co-worker Graham Dubois (who went out on medical leave in April 2020 and passed away in September 2020) were well outside the limitations period. *Id*. at 9. Cemex also contended that Plaintiffs' journal entries should be excluded because they do not contain allegations of harassment based on race or disability within the limitations period. *Id*. at 10–11. Cemex also sought to exclude third-party witnesses Michael Jenkins and Willie Gallop, both former Cemex coworkers, from testifying. Jenkins last worked in the summer of 2020 and did not have any firsthand knowledge of harassing conduct towards Plaintiff. Further, Gallop could not authenticate his declaration of other coworkers using derogatory language and denied making derogatory remarks against Plaintiff. *Id*. at 11–12. The Court denied Cemex's motion in limine stating that such evidence was "[r]elevant to environmental harassment and corporate knowledge." Dkt. No. 204. Cemex argued that evidence of alleged pre-2021 harassment is "not only time-barred but also irrelevant and unfairly prejudicial, and must be excluded." Dkt. No. 187 at 14.

**B.    Plaintiff's Allegations Involving Larson Pre-Date the Limitations Period.**

During discovery, Plaintiff did not take the deposition of plant manager Larson, did not include her on the trial witness list and did not call her as a witness at trial.[1] Declaration of Dorothy Liu, ¶ 2. However, at trial, Plaintiff presented evidence that, early in his employment at the Antioch plant, he reported alleged incidents of harassment to Larson, including being called "jungle bunny" and the "N-word." Dkt. No. 239 (3/25 Tr.) at 423:6–425:1; Dkt. No. 244-43 (Trial Exh. 380–100). Plaintiff testified that he told Larson about a drawing of a noose that he claimed had been placed on

---

[1] That discovery conduct made sense because Larson was no longer Plaintiff's manager as of Spring 2020 and thus none of her actions would be inside the limitations period.

3                                           Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

a wall and about alleged name-calling by coworkers. Dkt. No. 238 (3/24 Tr.) at 301:18–302:19; Dkt. No. 244-43 (Trial Exh. 380-100).[2] Plaintiff also testified that after he reported the incident to Larson, and he wrote in his notice that she told Plaintiff: "Ninja want [*sic*] you just quit" and that "ninja" is another form of the "N-word." Dkt. No. 239 (3/25 Tr.) at 423:6–425:1; Dkt. No. 244-42 (Trial Exh. 380-97). Critically, however, Plaintiff acknowledged at trial that Larson ceased being his manager well before the limitations period applicable to his claims. Plaintiff testified that Larson stopped being his manager sometime in 2020. Dkt No. 238 (3/24 Tr.) at 318:24–319:11. Additionally, Joanna Pine, Cemex's Director of Human Resources, testified unequivocally that Larson served as a plant manager only until April 20, 2020, after which she no longer held that role. Dkt. No. 240 (3/26 Tr.) at 740:12–741:15. This testimony was undisputed at trial.

Plaintiff affirmatively acknowledged the timing problem in closing argument as his counsel told the jury: "Recall that Ms. Larson managed or supervised – stopped supervising Mr. Sample in 2020. So we're talking about conduct that happened before 2020." Dkt. No. 242 (3/30 Tr.) at 981:21–23.

### C.    There Was No Evidence of Harassment Within the Limitations Period.

#### 1.    Conduct alleged without reference to a date, timeframe or year.

Plaintiff testified that other employees harassed him and called him names like "monkey," "retard," "stupid," and "dumb" and made gorilla sounds, but did not provide any date, timeframe or year when this occurred. Dkt. No. 238 (3/24 Tr.) at 292:11–21, 293:1–4, 294:16–19, 295:2–16, 296:23–297:15; Dkt. No. 239 (3/25 Tr.) at 420:14–425:1; Dkt. No. 244-42 (Trial Exh. 380-97); Dkt. No. 244-45 (Trial Exh. 380-126). Plaintiff also testified that he was called the "N-word," "jungle bunny," and a "gorilla" but again, did not provide any time frame as to when these remarks allegedly were made. Dkt. No. 238 (3/24 Tr.) at 297:16–298:25; Dkt. No. 239 (3/25 Tr.) at 420:14–425:1; Dkt. No. 244-42 (Trial Exh. 380-97); Dkt. No. 244-45 (Trial Exh. 380-126). Importantly, Plaintiff

---

[2] Plaintiff testified about two notebook entries from February 12 and 18, 2020, which described the incident where coworker Jim Hazen posted a union citation (a $500 fine) issued as a result of Plaintiff complaining to the Teamsters that Hazen had reported Plaintiff's unsafe act to a Cemex manager. Plaintiff testified that Hazen allegedly drew a noose with his union citation. However, Plaintiff's contemporaneous notebook entries made no mention of any alleged drawing. Dkt. No. 238 (3/24 Tr.) at 330:18–336:19; Dkt. No. 244-40–45 (Trial Exhs. 380-67, 69, 97, 100, 110, 126).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

did not testify that he told anyone about these incidents or that he reported these incidents to someone at Cemex. *See generally* Dkt. No. 238 (3/24 Tr.) at 292:11–300:15. In fact, Plaintiff testified that he confirmed that "a lot of times" he did not complain to anyone at Cemex when he was allegedly being harassed. Dkt. No. 238 (3/24 Tr.) at 303:22–25.[3]

Plaintiff testified extensively about notebooks (journals) he kept documenting perceived workplace events. Dkt. No. 238 (3/24 Tr.) at 328:6–337:3; Dkt. No. 244:40–45 (Trial Exhs. 380-67, 69, 97, 100, 110, 126). Plaintiff did not assign specific dates to most of the entries beyond associating them with his earlier years of employment. Dkt. No. 238 (3/24 Tr.) at 328:19–337:2; Dkt. Nos. 244:40–45 (Trial Exhs. 380-67, 69, 97, 100, 110, 126). Plaintiff admitted at trial that he did not provide a copy of the notebook entries to any Cemex manager or anyone in human resources. Dkt. No. 238 (3/24 Tr.) at 336:20–337:3. Plaintiff confirmed that he never submitted a written complaint about name-calling at Cemex. Dkt. No. 238 (3/24 Tr.) at 380:10–381:11.

Demetrius Hawkins, Cemex's plant manager after Larson (including before February 8, 2021), testified that he never heard any "monkey noises" or harassment during his time. Dkt. No. 239 (3/25 Tr.) at 458:1–21, 470:3–4. He also testified that Plaintiff complained during Hawkins's tenure that he felt "harassed" because coworkers called in safety complaints and criticized his work performance. Dkt. No. 239 (3/25 Tr.) at 486:2–488:16; Dkt. No. 244-9 (Trial Exh. 17). Hawkins further testified that Plaintiff did not report race based or disability based harassment to him during the post-2021 period. Dkt. No. 239 (3/25 Tr.) at 517:13–22, 528:13–22–529:2–529:5.

### 2.    Pre-February 8, 2021 conduct (i.e. outside the limitations period).

Michael Jenkins, a former coworker who worked at Cemex for only a handful of months in early 2020, testified that while he was employed at Cemex he heard coworkers refer to Plaintiff using derogatory terms such as "retard," "dummy," and "slowpoke." Dkt. No. 238 (3/24 Tr.) at 238:9–20, 245:18–23. Jenkins also testified that coworkers would make "[m]onkey sounds, gorilla

---

[3] During direct examination, Plaintiff was asked: "[a]t some point, did you complain about harassment?" and whether "[a]t some point did you tell your manager that you were being harassed?" Dkt. No. 238 (3/24 Tr.) at 304:8, 15–16. However, neither the question nor Plaintiff's response provided any context or clarification as to what statements he reported, or when or to whom. *Id.* at 304:8–306:8. Plaintiff testified as to one specific incident (alleged drawing of the noose) where he claimed he reported it to Larson in 2020. Dkt. No. 238 (3/24 Tr.) at 301:18–302:19.

Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

sounds, innuendos." Dkt. No. 238 (3/24 Tr.) at 257:4–9. Jenkins testified that Plaintiff could not hear these coworkers make these remarks but claimed that Plaintiff stated that "he's been talked to dirty and heard them – actually heard things." Dkt. No. 238 (3/24 Tr.) at 253:16–24. Jenkins did not work at Cemex after the summer of 2020. Dkt. No. 238 (3/24 Tr.) at 238:9–15.

### 3.    Post-February 8, 2021 conduct (i.e. within the limitations period).

Plaintiff presented evidence that Hawkins emailed Pine in February 16, 2021, about a complaint Hazen lodged against Plaintiff. Dkt. No. 239 (3/25 Tr.) at 477:1–483:14. The email stated that there was still "bad blood in the yard." Dkt. No. 244-5 (Trial Exh. 11). But Hawkins explained that he was referencing a previous incident where Plaintiff reported Hazen on a safety issue and Hazen was fined by the Teamsters union. Dkt. No. 239 (3/25 Tr.) at 482:10–483:14.

Plaintiff testified about contentious radio communications with coworkers, describing them as humiliating and harassing. Plaintiff referenced a notebook entry describing a radio exchange with a coworker identified as "Al," and testified that this incident occurred on or about July 28, 2021. Dkt. No. 239 (3/25 Tr.) at 425:11–430:21; Dkt. No. 244-44 (Trial Exh. 380-110). Plaintiff testified that the exchange involved profanity and criticism of his work performance but did not claim that racial or disability based slurs were used during this radio communication. Dkt. No. 239 (3/25 Tr.) at 425:20–428:13. In addition, Plaintiff testifies that he was referred to as "Joseph Milano," as if he were a child or dependent on driver trainer Thomas Milano, but again, Plaintiff did not claim that such a reference was a racial or disability based slur. Dkt. No. 239 (4/25 Tr.) at 429:21–430:21.

Plaintiff also testified about a verbal altercation with Hazen in August 2021. Dkt. No. 238 (3/24 Tr.) at 319:16–325:19; Dkt. No. 244-6 (Trial Exh. 12). In the incident report, Plaintiff stated that he was going to wash his truck and asked Hazen to let him do that but that Hazen told him "F you." Dkt. No. 238 (3/24 Tr.) at 323:13–25; Dkt. No. 244-6 (Trial Exh. 12). Plaintiff did not state that Hazen made any derogatory remarks related to his race or disability. Dkt. No. 238 (3/24 Tr.) at 324:5–325:19; Dkt. No. 244-6 (Trial Exh. 12). Plaintiff claims he had previously reported Hazen for "harassing him, picking on me, and making lies on me." Dkt. No. 238 (3/24 Tr.) at 326:10–22.

Plaintiff also filed a union grievance where his "biggest concern as of 1/3/2022" was that he learned that his commercial driver's license was suspended" and wanted help to "learn who had the

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

ability to disrupt not only [his] livelihood but the ability to have [his] license suspended." Dkt. No. 238 (3/24 Tr.) at 337:6–338:9; Dkt. No. 244-8 (Trial Exh. 14). Plaintiff did not mention being called names in the grievance, nor did the grievance mention any allegations of race or disability based slurs. Dkt. No. 238 (3/24 Tr.) at 337:6–338:9; Dkt. No. 244-8 (Trial Exh. 14).

Plaintiff also presented evidence of a July 19, 2022 email where Hawkins emailed Pine stating some drivers felt unsafe around Plaintiff and that Plaintiff was giving his coworkers attitude when they tried to assist him. Dkt. No. 244-9 (Trial Exh. 17). Hawkins also stated that Plaintiff claimed he felt "harassed" by what other drivers were saying about him. Dkt. No. 244-9 (Trial Exh. 17). Hawkins testified, however, that Plaintiff never said that his coworkers "used anything about race, disability, nothing in that nature." Dkt. No. 239 (3/25 Tr.) at 488:10–16. Pine testified that complaints received by HR during the relevant period reflected interpersonal workplace conflict and dissatisfaction rather than harassment tied to race, disability or any protected characteristics. Dkt. No. 239 (3/25 Tr.) at 586:11–588:18; Dkt. No. 244-5 (Trial Exh. 11).

**D.     At Trial, Plaintiff Presented Limited Evidence of his Emotional Distress.**

At trial, when asked about the impact of the alleged harassment, Plaintiff testified that it caused him stress and made it so on some days he did not want to go to work. Dkt. No. 238 (3/24 Tr.) at 310:15–18. But he failed to provide specifics about his mental distress beyond that general statement. *Id.* at 310:19–20 (asking Plaintiff if there was "[a]nything else" to which he answered "No, ma'am.") He also testified that he went to therapy to deal with the harassment at work and he reported the harassment to his therapist. *Id.* at 310:21–24. Plaintiff also stated he never took medication to treat his depression and anxiety. Dkt. No. 239 (3/25 Tr.) at 438:15–17. On multiple Department of Transportation (DOT) medical forms Plaintiff was required to submit to maintain his commercial driver's license in December 2022, May 2023, and May 2024, Plaintiff consistently answered "no" as to whether he had a history "anxiety, depression, nervousness, [and] other mental health problems." Dkt. Nos. 244-33 (Trial Exh. 346), 244-35 (Trial Exh. 352), and 244-37 (Trial Exh. 367); *see also* Dkt. No. 238 (3/24 Tr.) at 392:12–402:12.

Plaintiff's ex-wife testified that he lost sleep worrying about the harassment but did not explain how often. Dkt. No. 241 (3/27 Tr.) at 856:7–12, 851:9. She also did not explain how it

affected Plaintiff other than stating that he would doubt himself. *Id.* at 856:9–12. She also claimed that his body went through physical changes (*id.* at 856:13–18), but no medical records corroborating her testimony were admitted. In fact, no medical records were admitted into evidence at the trial, at all.

Plaintiff also retained Dr. George Washington Woods, M.D. to conduct a neurodevelopmental evaluation of Plaintiff based on a neurodevelopmental brain disorder Plaintiff has had since birth. Dr. Woods testified that Plaintiff suffered from various conditions, including major depressive disorder, but he did not testify to the cause of Plaintiff's depression. Dkt. No. 240 (3/26 Tr.) at 662:25–663:5. Instead, he offered testimony that someone who received the harassment Plaintiff was alleging would feel distress based on the fact he already had a brain disorder. *Id.* at 676:6–677:4. Dr. Woods also opined that someone with Plaintiff's brain condition could be depressed simply through that condition alone. *Id.* at 690:17–691:6.

Plaintiff also testified about other experiences in his life that caused him distress at the same relevant times. His mother became gravely ill in August 2022, which he described as "one of the worst things of [his] life." Dkt. No. 238 (3/24 Tr.) at 385:8–13. Plaintiff's mother passed shortly thereafter, which affected Plaintiff profoundly. *Id.* at 385:5–386:2. In early 2022, he found out his commercial driver's license was suspended, interfering with his ability to do his job and upsetting him greatly. *Id.* at 340:12–342:8. He described this period as a "major hardship" and his "biggest concern." *Id.* He also experienced two different divorces (and a separation prior to his second divorce), which he acknowledged caused him significant stress. *Id.* at 390:9–392:11. Dr. Woods also acknowledged that his mother's illness and her passing, and the general frustration at work, in addition to the harassment, were major sources of his stress. *Id.* at 668:7–10.

**E.    The Court's Jury Instructions and Verdict Form Omitted Any Limitations or Continuing-Violations Instruction and Findings Over Defendant's Objections.**

On the last day of trial, following the charging conference, the Court issued its Final Jury Instructions. Dkt. No. 225. Those instructions defined the elements of Plaintiff's hostile work environment claims and explained that, to establish liability against Cemex, Plaintiff must show coworker harassment. *Id.* at 16–22. Plaintiff was required to prove that Cemex management "knew

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

or should have known of the harassment and failed to take prompt, effective remedial action." *Id*.

Cemex had proposed a specific jury instruction and verdict form requiring the jury to find at least one act of harassing conduct within the limitations period, that the conduct outside of the limitations period was sufficiently similar in nature to the later conduct or was part of the same pattern or practice of harassment before considering earlier conduct under a continuing-violations theory. Dkt. No. 194 at 84–85. The Court rejected that proposed instruction and did not give any substitute instruction addressing time-barred conduct. Dkt. No. 225. Critically, the Court did not instruct the jury on the statute of limitations, the continuing violations doctrine, and did not require the jury to make any findings tying Cemex's liability to whether it knew or should have known of the harassment within the limitations period. Dkt. Nos. 225, 234.

Additionally, Jury Instruction No. 19 expressly defined only two individuals as "supervisors" whose knowledge could give rise to employer liability: Hawkins and Pine. Dkt. No. 225 at 22. The supervisory status of Larson was addressed directly during the charging conference on March 27, 2026. Plaintiff initially argued that both Kimberly Linton and Larson should be included in the jury instruction defining supervisors. Dkt. No. 241 (3/27 Tr.) at 935:12–938:21. Cemex objected, emphasizing that Larson was not a plant manager during the relevant time period and was "well before 2020." (*Id*.) The Court acknowledged this concern, observing that while evidence might be admissible under a continuing-violations theory, Larson was "outside the statute." (*Id*.)

At that point, Plaintiff's counsel expressly conceded the limitations issue and agreed that Larson would not be included in the supervisory definition given to the jury: "I'm okay with Ms. Larson not being on it." Dkt. No. 241 (3/27 Tr.) at 938:2–6. Accordingly, Final Jury Instruction No. 19 defined supervisors solely as Hawkins and Pine, and did not include Larson. Dkt. No. 225 at 22.

The verdict form submitted to the jury mirrored the final instructions. It asked the jury to decide whether Plaintiff proved his hostile work environment claims, but did not ask the jury to find whether any of the alleged acts occurred within the limitations period. Nor did it ask the jury to make findings relevant to the continuing violations doctrine. As a result, the verdict form contained no mechanism to determine whether the jury's findings rested on conduct occurring within the

limitations period or on earlier, time-barred allegations. Dkt. No. 227.

**F.    The Jury's Question and Resulting Verdict Confirm the Prejudicial Impact of the Instructional and Verdict Form Errors.**

A day after deliberations began, the jury submitted the following written question to the Court: "Under Jury Instruction No. 19, can the jury consider Mr. Sample's previous plant manager, Laura Larson, a supervisor?" Dkt. No. 233; Dkt. 243 (3/31 Tr.) at 1064:8–11. Cemex objected to any instruction permitting the jury to treat Larson as a supervisor, explaining that Larson was not Plaintiff's supervisor during the limitations period and that permitting the jury to rely on her conduct or knowledge—without a continuing-violations instruction—would improperly allow liability based on time-barred conduct. Dkt. No. 243 (3/31 Tr.) at 1064:14–1065:17. Counsel for Cemex also noted to the Court that this was previously addressed: "[t]here was a jury instruction specifically defining who are supervisors in the case" that "included Demetrius Hawkins and [] Ms. Joanna Pine. Plaintiff's counsel at that point argued that Laura Larson should be in there. I thought we had this discussion for that specific jury instruction." Dkt. No. 243 (3/31 Tr.) at 1065:21–1066:4. Cemex alternatively requested that the Court instruct the jury that it could consider Larson only if it first found actionable conduct and management knowledge in the limitations period. *Id*. at 1067:15–25.

The Court noted that "the way that the evidence came in, either they're going to find that there was harassment or they're not. . . . [I]n addition, they had some specific incidents within the period. I don't think that's going to be the issue. The question that they're asking is whether the previous plant manager was a supervisor. The answer to that question is yes. . . ." Dkt. No. 243 (3/31 Tr.) at 1068:1–10. That response addressed supervisory status as a categorical matter, without distinguishing between supervision occurring inside versus outside the limitations period or tying supervisory knowledge to timely, actionable conduct.

The Court rejected Defendant's proposed curative instruction. Instead, the Court responded to the jury as follows: "Yes, Ms. Larson, like Mr. Hawkins, was a supervisor." Dkt. No. 243 (3/31 Tr.) at 1068–1069. That response was sent back to the jury with no additional explanation regarding the statute of limitations, continuing violations, or the temporal scope of permissible evidence. *Id*.

Roughly twenty minutes after receiving the Court's response, the jury returned its verdict in

10                                                      Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's favor on his hostile work environment claims under Title VII and FEHA, against Plaintiff on his Section 1981 claim, and awarding $5,000,000 in noneconomic damages. Dkt. No. 243 (3/31 Tr.) at 1069:12–1071:20; Dkt. No. 234. The jury declined to award punitive damages. Dkt. No. 234.

### III.    LEGAL STANDARD

The Court may grant a motion for JMOL under Rule 50(b)[4] where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (citation omitted). The Court may order a new trial under Rule 59 "where 'the verdict is against the weight of the evidence,' 'the damages are excessive' or, 'for other reasons, the trial was not fair to the moving party.'" *Claiborne v. Blauser*, 934 F.3d 885, 894 (9th Cir. 2019) (citation and alteration omitted). A new trial may also be granted where "the jury has reached a seriously erroneous result," *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) (citation omitted), or "on any ground necessary to prevent a miscarriage of justice," *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 845–46 (9th Cir. 2014). That includes errors regarding jury instructions. *Watson v. City of San Jose*, 800 F.3d 1135, 1142 (9th Cir. 2015). The Court may weigh evidence, evaluate witness credibility, and is not required to view evidence in favor of the prevailing party. *United States v. Kellington,* 217 F.3d 1084, 1095 (9th Cir. 2000). Where the damages are excessive, the Court may deny a new trial conditioned on plaintiff's acceptance of a remittitur, which "must reflect 'the maximum amount sustainable by the proof.'" *Oracle Corp.*, 765 F.3d at 1094 (citation omitted).

### IV.    ARGUMENT

**A.    Cemex Is Entitled to JMOL or, at a Minimum, a New Trial on Liability.**

**1.    Plaintiff had the burden of pleading and proving timely filing under the statute of limitations and the application of the continuing violations doctrine.**

An administrative complaint must be verified and filed with the Civil Rights Department (CRD) within three years from the date upon which the unlawful employment practice or refusal to cooperate occurred. Cal. Gov't Code § 12960(e)(3).

---

[4] Rule citations are to the Federal Rules of Civil Procedure.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

Further, a plaintiff cannot file a lawsuit under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.) unless a plaintiff first files a charge with the Equal Employment Opportunity Commission (EEOC) and obtains a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *see Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018) ("There are effectively two limitations periods for Title VII claims"). A charge with the EEOC must ordinarily be filed within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). An aggrieved party may, however, elect to file charges initially with a state or local fair employment agency. In such case, the EEOC charge must be filed within the earlier of (i) 300 days after the alleged unlawful employment practice occurred, or (ii) within 30 days after receiving notice that the state or local agency has terminated the proceedings under state or local law. 42 U.S.C. § 2000e-5(e)(1); see *Stuart v. Local 727, Int'l Brotherhood of Teamsters*, 771 F.3d 1014, 1019–1020 (7th Cir. 2014) (applying 300-day period).

The plaintiff has the burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient complaint with the CRD and/or EEOC. *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014). This burden of proof extends to any excuse or justification for the failure to timely file, such as the continuing violation exception. *Jumaane v. City of Los Angeles*, 241 Cal. App. 4th 1390, 1402 (2015).

Where an employer engages in continuous conduct violating the FEHA (e.g., sexual harassment throughout employment), it may be held liable for the entire course of conduct, including acts outside the statutory period, if sufficiently connected to unlawful conduct *within the limitations period. See Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005). The continuing violation doctrine applies if an employer's unlawful employment actions: (a) are sufficiently similar in kind; (b) have occurred with reasonable frequency; and (c) have not acquired a degree of permanence. *Richards*, 26 Cal. 4th at 823; *Brome v. California Highway Patrol*, 44 Cal. App .5th 786, 799 (2020). "Permanence" in this context means the employer's statements and actions make it clear to a reasonable employee that any further efforts at "informal conciliation to obtain reasonable accommodation or end harassment will be futile." *Richards*, 26 Cal. 4th at 823. Courts evaluate "permanence" based on the *employer's* actions

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

and statements, not the employee's subjective belief. *Hoglund v. Sierra Nevada Memorial-Miners Hosp.*, 102 Cal. App. 5th 56, 71–72 (2024).

Under a Title VII hostile work environment claim, where a plaintiff alleges that a series of acts occurring both outside and within the limitations period together constitute an "unlawful employment practice," the trier of fact must determine whether the conduct, viewed as a whole, was "sufficiently severe or pervasive." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). That inquiry turns on whether the earlier and later events involved "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id*. at 120. By contrast, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. at 113; *see also Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) ("Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur. Unlitigated bygones are bygones.").

Courts may not "mix recent discrete acts like tinder with the planks of ancient [events]" to manufacture a hostile work environment claim. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005). Rather, "[i]f the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts," and whether earlier and later conduct form part of the same unlawful employment practice requires careful evaluation of similarity, frequency, and connection. *Id.* at 893–94; *see also Duncan*, 397 F.3d at 1309–10 (excluding pre-filing-period conduct where earlier acts were committed by a different set of actors, under different circumstances, and were of a different character than the acts occurring within the limitations period).

In short, the statute of limitations and the continuing violations doctrine are not abstract legal concepts; they allocate the burden of proof and delimit the conduct on which liability may rest. Under both FEHA and Title VII, the plaintiff bears the burden of establishing a basis to rely on otherwise time-barred conduct, including satisfaction of the continuing violations doctrine. California's standard civil jury instructions reflect this same allocation of proof, requiring a plaintiff invoking the continuing violations doctrine to prove similarity, reasonable frequency, and lack of

13    Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

permanence before time-barred conduct may be considered. *See* CACI No. 2508.

**2.    This Court removed the statute of limitations and continuing violations issues from the jury, relieved Plaintiff of his burden and denied Cemex its statute of limitations defense.**

Here, the Court repeatedly characterized application of the continuing violations doctrine as a factual issue. In denying summary judgment, the Court held that there were "triable issues" as to whether the continuing violations doctrine applied and whether Cemex "knew or should have known" that alleged harassment was occurring. Dkt. No. 175 at 22–23. The Court relied on the same premise in denying Cemex's motion in limine, permitting evidence of pre-2021 conduct on the ground that it was "relevant to environmental harassment and corporate knowledge." Dkt. No. 204.

Although the Court treated continuing violations as a question of fact sufficient to admit otherwise time-barred evidence, the Court never submitted that factual issue to the jury. Cemex proposed jury instructions and a verdict form on the limitations period and the continuing violations doctrine. The Court rejected those instructions and the verdict form. As such, the jury was not instructed on the statute of limitations, the continuing violations doctrine, or the factual findings required under either federal or California law to link time-barred conduct to timely claims. Nor was the jury instructed that, even under a continuing-violations theory, Plaintiff was required to establish that Cemex knew or should have known of actionable harassment during the limitations period and failed to take corrective action. As a result, the jury was asked to render a liability verdict without ever deciding the predicate factual question that justified its consideration of pre-limitations evidence in the first instance. By rejecting Cemex's proposed instruction and verdict form and giving no substitute, the Court effectively removed from the jury Plaintiff's burden to demonstrate that his claims were timely and that the continuing violations doctrine applied, while simultaneously stripping Cemex of its statute of limitations defense. *Dang v. Cross,* 422 F.3d 800, 804–05 (9th Cir.2005) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.") (quotations and citations omitted); *Jumaane*, 241 Cal. App. 4th at 1402; *Kim*, 226 Cal. App. 4th at 1345.

The prejudice from these errors crystallized during deliberations. The jury asked whether it could consider Larson as a "supervisor." Dkt. No. 243 (3/31 Tr.) at 1064:8–11. That question is

dispositive in its own right as to prejudice as the jury would not ask it unless they were considering Larson's conduct, all of which was outside the applicable period. Under the Court's instructions, only two individuals—Hawkins and Pine—were identified as supervisors whose knowledge could form the basis for employer liability. Dkt. No. 225 (Jury Instruction No. 19.) The jury's question reflects that it rejected liability based on the conduct or knowledge of either Hawkins or Pine and therefore sought to determine whether it could instead rely on Larson, whose tenure undisputedly ended in 2020. Further, that inquiry underscores the unresolved issue at the heart of the case: whether any supervisor knew or should have known of actionable harassment during the limitations period, as opposed to whether a supervisor may have known of alleged conduct at some earlier point in time.

In other words, the jury's inquiry demonstrates that the unresolved statute of limitations and continuing violations issues were outcome-determinative. On this record, absent Larson, there was no legally sufficient evidentiary basis for a finding of employer liability under the instructions the jury had been given. Cemex objected and requested a limiting instruction that would have required the jury to first find actionable conduct and employer knowledge within the limitations period. Dkt. No. 243 (3/31 Tr.) at 1064:14–68:19. The Court rejected that request.

Instead, the Court instructed the jury that "Ms. Larson, like Mr. Hawkins, was a supervisor." Dkt. No. 243 (3/31 Tr.) at 1068:21–1069:11. That response effectively resolved the unanswered factual question in Plaintiff's favor, notwithstanding Plaintiff's prior concession that Larson was outside the limitations period and the Court's own acknowledgment at the charging conference that Larson was "outside the statute." Within approximately twenty minutes of receiving that instruction—and without any guidance on the statute of limitations or continuing violations doctrine—the jury returned a verdict against Cemex. Dkt. No. 243 (3/31 Tr.) at 1069:17–20.

**3.      The jury's question and the erroneous answer indicate it did not find supervisor knowledge within the limitations period and therefore Cemex is entitled to judgment as a matter of law.**

The sequence described above compels judgment as a matter of law because Larson could not be the supervisor to satisfy the knowledge element and the jury did "not have a legally sufficient evidentiary basis" to conclude that Hawkins or Pine had any knowledge of the harassment within

the limitations period. *Shafer*, 868 F.3d at 1115 (citation omitted). The jury's question itself demonstrates that it had rejected liability based on Hawkins or Pine and was searching for an alternative basis to satisfy the supervisory-knowledge element. If the jury had found that Hawkins or Pine knew or should have known of actionable harassment during the limitations period, there would have been no reason to inquire whether Larson—who was undisputedly Plaintiff's supervisor outside the limitations period—could be considered a supervisor. Because the jury returned a verdict within 20 minutes of receiving an answer to their question as to Larson, the verdict turns on that response. In these circumstances, the jury's verdict does not merely rest on instructional error; it affirmatively establishes the verdict is based on legally insufficient evidence. Accordingly, judgment as a matter of law should be entered.

> **4.     At minimum, the Court's failure to provide the jury with instructions on the statute of limitations and continuing violations was legally erroneous and warrants a new trial.**

Alternatively, and at a minimum, a new trial is required. The Court's failure to instruct the jury on the statute of limitations and the continuing violations doctrine, coupled with its mid-deliberation instruction permitting reliance on a time-barred supervisor without the required predicate findings, deprived Cemex of its statute of limitations defense and a fair trial. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("It is equally clear that erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial."); *see also Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 977 (9th Cir. 2009) (erroneous jury instruction affecting party's substantial rights is ground for reversal); *Crowley v. Epicept Corp.*, 883 F.3d 739, 750 (9th Cir. 2018) ("[I]t is reversible error for a trial judge to give an answer to a jury's question that is misleading, unresponsive, or legally incorrect.") (internal quotes omitted).

> **B.     This Court Should Grant a New Trial Where Plaintiff Failed to Present Sufficient Evidence of Harassment and Supervisory-Knowledge Within the Limitations Period.**

Even apart from the instructional and verdict-form errors addressed above, Cemex is entitled to judgment as a matter of law because Plaintiff failed to present legally sufficient evidence of a hostile work environment occurring within the applicable limitations period, and failed to show that any Cemex supervisor knew or should have known of actionable harassment during that period.

16   Case No. 3:23-cv-00428-WHO

Under both FEHA and Title VII, liability cannot rest on time-barred conduct unless the plaintiff establishes a continuing violation anchored by non-discrete, harassing conduct occurring within the limitations period and imputable to the employer. 42 U.S.C. § 2000e-5(e)(1). Gov't Code § 12960(e)(3); *National R.R. Passenger Corp.*, 536 U.S. at 113–16; *Richards*, 26 Cal. 4th at 823; *Yanowitz*, 36 Cal. 4th at 1056.The trial record does not support such a finding.

As detailed in Section II.B, the most explicit and severe allegations of race-based harassment—alleged use of the N-word, references to "jungle bunny," and the alleged noose drawing—were tied to Plaintiff's interactions with Larson and coworkers during her tenure, which undisputedly ended in April 2020. Dkt. No. 239 (3/25 Tr.) at 423:6–425:1; Dkt. No. 238 (3/24 Tr.) at 301:18–302:19; Dkt. No. 244-43 (Trial Exh. 380-100); Dkt. No. 244-42 (Trial Exh. 380-97); Dkt. No. 240 (3/26 Tr.) at 740:14–741:15. Plaintiff acknowledged at trial that Larson ceased supervising him well before February 8, 2021, and counsel conceded in closing argument that Larson's conduct occurred before 2020. Dkt. No. 238 (3/24 Tr.) at 318:24–319:11; Dkt. No. 242 (3/30 Tr.) at 981:17–23.

The evidence Plaintiff relied upon, summarized in Section II.C, falls into three categories, none of which is sufficient to support a hostile work environment claim. First, Plaintiff testified about offensive comments and mocking behavior without providing any dates, timeframes, or years, and without tying those alleged remarks to the limitations period. Dkt. No. 238 (3/24 Tr.) at 292:11–21, 293:1–4, 294:16–19, 295:2–16, 296:23–297:15, 297:16–298:25, 300:7–15; Dkt. No. 239 (3/25 Tr.) at 420:14–425:1. Second, testimony from former coworker Michael Jenkins concerned alleged derogatory language heard while Jenkins was employed at Cemex, but Jenkins left the company in the summer of 2020—again, before the limitations period—and did not testify to witnessing or reporting such conduct after that time. Dkt. No. 238 (3/24 Tr.) at 238:9–20, 245:18–23, 253:16–24, 257:4–9. Third, the incidents Plaintiff identified after February 8, 2021 involved workplace conflict and interpersonal disputes—such as safety complaints, radio exchanges involving profanity, and arguments with coworkers—rather than harassing conduct based on race or disability. Dkt. No. 239 (3/25 Tr.) at 425:11–429:15, 477:1–483:14, 488:7–19; Dkt. No. 238 (3/24 Tr.) at 319:16–325:19; Dkt. No. 244-5 (Trial Exh. 11); Dkt. No. 244-6 (Trial Exh. 12).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

Critically, Plaintiff failed to establish the supervisory-knowledge element required for employer liability during the limitations period and the continuing violations doctrine does not relieve Plaintiff. Dkt. No. 239 (3/25 Tr.) at 517:9–22, 528:2–529:5; Dkt. No. 239 (3/25 Tr.) at 488:10–16. Absent proof of employer knowledge during the actionable period, Plaintiff cannot establish liability based on a theory of "continuing knowledge" untethered to timely supervisory awareness. Hawkins was the only supervisor whose tenure overlapped in the post-February 8, 2021 period. Dkt. No. 239 (3/25 Tr.) at 470:3–4. Hawkins testified that Plaintiff did not report race-based or disability-based harassment during that period, and that the complaints concerned safety issues, job-performance disputes, and general workplace friction. Dkt. No. 239 (3/25 Tr.) at 458:1–21, 488:7–19, 517:9–22, 528:2–529:5. Pine similarly testified that HR-reviewed complaints during the relevant period reflected interpersonal conflict and dissatisfaction, not harassment tied to protected characteristics. Dkt. No. 239 (3/25 Tr.) at 586:10–588:20; Dkt. No. 244-9 (Trial Exh. 17). Plaintiff's own grievances and communications in the post-2021 period likewise focused on safety complaints, perceived unfair treatment, and workplace tension—not protected-class harassment. Dkt. No. 238 (3/24 Tr.) at 337:6–338:9; Dkt. No. 244-8 (Trial Exh. 14); Dkt. No. 244-9 (Trial Exh. 17).

Taken as a whole, the trial record contains no evidence of harassing acts, comments, or conduct occurring within the February 8, 2021 limitations period that could independently sustain a hostile work environment claim, nor any evidence that a Cemex supervisor knew or should have known of such alleged harassment in that period. Without actionable conduct within the limitations period—and without supervisory knowledge within that period—a reasonable jury lacked a legally sufficient evidentiary basis to impose liability on Cemex. Judgment as a matter of law is therefore required. At a minimum, the absence of actionable, supervisor-known harassment within the limitations period underscores the prejudice resulting from the Court's instructional errors.

### C.    The Compensatory Damages Award Is Excessive and Not Supported by the Weight of the Evidence; the Court Should Therefore Order a New Trial or Remit the Damages to $150,000.

In reviewing a jury's damages award, the Court may order a new trial where the award is "grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." *Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Local No.*

18                                                          Case No. 3:23-cv-00428-WHO

*287,* 175 F.3d 680, 689 (9th Cir. 1999) (citation omitted). If the Court concludes an award is excessive, it may either order a new trial or deny the motion, conditioned on the prevailing party's acceptance of a remittitur for a lower award. *Paul v. Asbury Auto. Grp., LLC*, No. CIV.06-1603-KI, 2009 WL 188592, at *2 (D. Or. Jan. 23, 2009).

A new trial is *required* if the damages award was made as a result of the "passion and prejudice" of the jury. *Watec Co. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005). That said, even where the award is not a result of the jury's passion and prejudice, but is still excessive, the district court remains free to vacate the judgment and order a new trial in its discretion. *Id.*

In light of comparable cases involving workplace harassment and the evidence at trial, the Court should order a new trial or remit to an award of $150,000.

> **1.    Noneconomic damages awards for workplace harassment exceeding $1 million are rare and only permitted when there is sufficient evidence of the severity and duration of the plaintiff's mental anguish.**

The Ninth Circuit has held that "courts are required to maintain some degree of uniformity in cases involving similar losses." *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir. 1984). This Court has also emphasized that although comparing jury awards in other cases can present certain problems, "comparable cases provide a rough benchmark." *Velez v. Roche*, 335 F. Supp. 2d 1022, 1039 (N.D. Cal. 2004). Here, the jury's $5 million award of compensatory damages is completely unprecedented in this Circuit. Comparable cases show that awards are typically much lower and only in excess of $1 million when the facts indicate pervasive and permanent harm.

In cases of workplace harassment involving overtly racist behavior and a significant damages award, district courts within this Court have reduced awards exceeding $2 million through a remittitur. *Paul*, 2009 WL 188592, at *2; *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 834–841 (N.D. Cal. 2022). *Paul* and *Diaz* are instructive here because in each case involved claims of racial harassment in the workplace and the court nevertheless significantly reduced the damages awards.

In *Paul*, the jury awarded $1.9 and $2.1 million in emotional distress damages to two plaintiffs who succeeded on hostile work environment claims where their supervisors had condoned other coworkers' repeated use of racial slurs such as the N word. 2009 WL 188592, at *1, *4. The court remitted damages to $150,000 for each plaintiff, reasoning that the evidence of the emotional

19

distress was "fairly minor," that the plaintiffs were not terminated or subjected to physical abuse, and that plaintiffs never reported difficulties with continuing their work after they were no longer employed by the defendant. *Id.* at *8–9.

Similarly, in *Diaz*, this Court issued a remittitur reducing a $6.9 million noneconomic damages award to $1.5 million for a hostile work environment claim where the plaintiff was subject to continuous and repeated racial abuse, including repeated use of the N-word and other slurs and the drawing of racist caricatures, while plaintiff's supervisors and company management "did little or nothing to respond." *Diaz*, 598 F. Supp. 3d at 816. This Court concluded the $6.9 million damages award was an "outlier" in such cases, as it was more than five times the award in a comparable Second Circuit case involving gender-based discrimination and harassment. *Id.* at 837 (analyzing *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014)). And while this Court acknowledged that the jury had "ample grounds to find that [the plaintiff] was severely harmed," the $6.9 million was "far out of proportion to the evidence." *Diaz*, 598 F. Supp. 3d at 816.

Courts outside the Ninth Circuit have also not been reluctant to reduce large damages awards through a remittitur where the distress was not pervasive and permanent. *Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 545–48 (2d Cir. 2020) (remitting $2.16 million award to $250,000 and explaining that plaintiff's "proof regarding emotional distress did not contain the evidence of prolonged mental harm or negative, long-term prognosis that is typically present in cases with awards around $500,000.").

Moreover, in cases where the award was relatively high (i.e. exceeding $1 million) and ultimately upheld by the district court on post-trial motions or appeal, it was primarily because plaintiff presented specific and credible evidence of severe and extreme mental distress and its impact on plaintiff's mental and physical health. *Lawson v. PPG Indus., Inc.*, No. 8:18-CV-00705-JVS-JPR, 2025 WL 2493767, at *12–13 (C.D. Cal. Aug. 13, 2025) ($2 million damages award upheld where evidence included lost sleep, plaintiff was depressed and ceased his favorite hobbies such as golf, gained more than 100 pounds of weight, and plaintiff's 41-year career in the paint business ended causing him to become an Uber Eats driver resulting in low self-esteem); *Cf. Gray v. Imperial Pac. Int'l, (CNMI), LLC*, No. 1:19-CV-00008, 2023 WL 3714156, at *17 (D. N. Mar. I.

20

May 30, 2023) (in default judgment case involving a hostile work environment claim under Title VII and Section 1981, awarding $1 million despite plaintiff's request for $2 million and where plaintiff submitted several declarations and an expert to show plaintiff suffered severe depression and an "ongoing crisis in personal identity"); *Turley*, 774 F.3d at 167–168 (affirming $1.32 million award in case involving several racial harassment in workplace including use of racial slurs, spray-painting "KKK" on plaintiff's workstation, and making intercom announcements threatening to kill plaintiff); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493 (9th Cir. 2000) (affirming $1 million award for workplace harassment that lasted for four years and resulted in anxiety, rashes and stomach problems for plaintiff).

Accordingly, the "benchmarks" for this Court to utilize in assessing the damages award here are: (1) a $5 million award is a complete outlier as research did not reveal any cases in the harassment context where such an award was upheld by the district court or on appeal;[5] $1–2 million is the large end of the scale for such awards (*Diaz*, *Lawson*, *Gray*, *Turley*, *Passanto*); and (3) where the severity and duration of the harm was minor, or the evidence of mental distress is vague and non-specific, the award is typically less than $500,000 (*Paul*, *Sooroojballie*). As explained in the next section, the facts here can only fit within this third category.

**2.    Plaintiff did not present sufficient evidence of the severity and duration of his harm, or its causation, to justify an award at the staggering amount of $5 million.**

Here, this Court should order a new trial or remit to a lower amount of damages because the $5 million award is grossly excessive and not supported by the evidence. While the type of harassment Plaintiff received from his coworkers would lead anyone to feel *some* measure of distress, the evidence supporting the degree, duration and cause of that distress was limited and insufficient to justify such a large noneconomic damages award.

First, there is insufficient evidence to show the severity of Plaintiff's mental distress and its

---

[5] Outside of workplace harassment, there is one Ninth Circuit case upholding a $5 million compensatory damages award (each) for officers who were wrongfully investigated and prosecuted for crimes based on the tip of a corrupt officer. *Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008). But, as this Court explained in *Diaz* (598 F. Supp. 3d at 838), the case is not comparable to a workplace harassment case because the award was not purely noneconomic, as it was based in part on impairment to reputation and pecuniary losses. *Harper*, 533 F.3d at 1029.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

impact on him. Plaintiff testified that he felt distress and went to therapy on account of the harassment he was receiving at work, but he did not provide specific details regarding the severity and duration of his pain. Dkt. No. 238 (3/24 Tr.) at 310:15–311:5.[6] For example, while Plaintiff stated he continues to cry in his therapy sessions, he also stated that it "hit[s] [him] at different times and it takes advantage of [him]," without further explanation. *Id.* at 311:2–4. Plaintiff also testified he never took any medication to treat depression or anxiety. Dkt. No. 239 (3/25 Tr.) at 438:15–17. And, like the plaintiff in *Paul*, there was no evidence that Plaintiff could not continue his current career on account of the effects of his mental distress. 2009 WL 188592, at *9.

Plaintiff's ex-wife also testified to his distress but was similarly unclear on how long and deep the pain lasted. For example, she reported that he lost sleep on certain nights (Dkt. No. 241 (3/27 Tr.) at 856:7–12, 851:9) but did not explain for how long he was suffering such distress or how often he would lose sleep. She also described the effect the harassment had on him as him doubting himself and being unsure of himself. *Id.* at 856:9–12. She also testified that he had physical manifestations of the stress at work (e.g. *id.* at 856:13–18), but Plaintiff did not submit any medical records at trial corroborating these claims about his physical condition.

Moreover, on three different occasions, when Plaintiff had to submit DOT medical forms he answered "no" to the question of whether he has or had "anxiety, depression, nervousness, [and] other mental health problems." Dkt. Nos. 244-33 (Trial Exh. 346) at 3 (December 2022 form); 244-35 (Trial Exh. 352) at 3 (May 2023 form); 244-37 (Trial Exh. 367) at 4 (May 2024 form); *see also* Dkt. 238 (3/24 Tr.) at 392:12–402:12. On cross-examination, Plaintiff testified that he believed he was answering the questions accurately based on the fact he did not take medication for anxiety or depression. Dkt. No. 239 (3/25 Tr.) at 438:6–439:7. But the forms are quite clear in asking whether Plaintiff has or ever had anxiety, depression or mental health problems, and the signature block certifies that the information is accurate and complete and that Plaintiff knew and understood any

---

[6] Counsel's direct examination spans about 35 pages of the certified transcript (Dkt. No. 238 (3/24 Tr.) at 278–313), but the questioning about how the harassment made him feel, and his efforts in therapy was only a little more than a page towards the end of the examination. *Id*. at 310–311. Other than filling out his DOT assessment forms, the issue of Plaintiff's mental distress was then not raised in either the cross-examination or re-direct examination. *See generally id.* at 313–408; Dkt. No. 239 (3/25 Tr.) at 418–452.

false or missing information could invalidate the examination and the Medical Examiner's Certificate. Dkt. No. 244-33, 244-35, 244-37. The fact Plaintiff did not identify his anxiety or depression on these forms demonstrates that he did not envision the limited nature of his distress as affecting his ability to maintain his commercial driver's license.

Second, there is no evidence that the alleged harassment at work *caused* Plaintiff's distress; in fact, there is evidence of other significant sources of his distress, including:

- **Death of his mother:** Plaintiff testified that his mother, who had recently passed away, first became ill in August 2022, when Plaintiff began taking leaves of absence at work and he described it as "one of the worst things of [his] life." Dkt. 238 (3/24 Tr.) at 385:5–386:2.

- **Loss of his commercial driver's license**: Plaintiff's commercial driver's license was suspended due to a claim that he was unfit to drive, which upset him significantly. *Id.* at 340:12–342:8 (describing the loss of his license as a "major hardship" in his life and his "biggest concern").

- **Divorces/separations:** Plaintiff also experienced two different divorces during the time period he claims the harassment occurred, once in 2020 and then a separation in 2022 with which led to divorce. *Id.* at 390:9–392:11. Both divorces caused him stress. *Id.* at 391:25–392:11.

It is well established, as this Court noted in *Diaz*, compensatory damages award must only "compensate for the harm *caused by the defendant*." 598 F. Supp. 3d at 841 (emphasis added) (citing *Watson v. City of San Jose*, 800 F.3d 1135, 1138 (9th Cir. 2015)). In *Diaz*, this Court concluded that the record did not support that the jury award was based on anything other than the harassment. *Id.* But the same conclusion cannot be drawn here where there were multiple, significant events contributing to Plaintiff's distress, including the death of his mother, the loss of his commercial driver's license, and multiple divorces.

Plaintiff will likely point to the testimony of his expert Dr. Woods as corroborating his mental distress. But Dr. Woods was retained to conduct a neurodevelopmental evaluation of Plaintiff, a condition Plaintiff has had since birth. And while Dr. Woods opined that he was suffering from major depressive disorder, his opinion was limited to that diagnosis and not its cause. Dkt. No. 240 (3/26 Tr.) at 662:25–663:5. Dr. Woods's opinion was limited and did not establish the *evidence* of any distress, but merely an opinion as to how harassment might affect one with Plaintiff's

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

neurodevelopment disorder. *Id.* at 676:6–677:4.[7] This presents a contrast with *Diaz,* where an actual psychologist was retained and testified about the mental distress the plaintiff endured, and how it was caused by the racism he was experiencing at work. *Diaz*, 598 F. Supp. 3d at 836. Moreover, Dr. Woods also acknowledged the death of his mother and the general frustration at work, in addition to the harassment, were major sources of his stress. Dkt. No. 240 (3/26 Tr.) at 668:5–10 (reviewing medical records and opining that they "helped provide a chronology of Mr. Sample's stressors and his discussion of both the stress of his mother, but also the stress of employment and the stress of other employees harassing him."). Dr. Woods also opined that someone with Plaintiff's brain condition could be depressed simply through that condition alone. *Id.* at 690:17–691:6. All of this leads to the inevitable conclusion that the workplace harassment was not the sole cause of Plaintiff's distress.

Third, the duration of any harm associated with the alleged harassment is relatively short due to Plaintiff's several leaves of absence within the limitations period. As explained *supra*, the limitations period is from February 8, 2021 to February 8, 2024.[8] During that period, Plaintiff went on the following leaves of absence: (1) 3/8/22 through 6/1/22 (85 days); (2) 8/4/2022 through 5/15/2023 (284 days); and (3) 6/26/23 through 7/26/23 (30 days). Dkt. No. 238 (3/24 Tr.) at 356:9–361:22; see also Dkt. Nos. 244-10–14 (Trial Exs. 19, 28, 45, 55, 65).[9] Therefore, Plaintiff was only present at work for 688 days (roughly 1 year and 10 months) in the three-year limitations period. And there were no acts of alleged harassment within the limitations period, either. *See supra,* Sections IV.A-B. To the extent there were any such acts, they were short-lived, and any harassment leading to actionable injuries was shorter than other cases involving years-long and durable harassment. *See*, *e.g.*, *Turley*, 774 F.3d at 163 (plaintiff was subject to "an extraordinary and steadily intensifying drumbeat of racial insults, intimidation, and degradation over a period of *more than*

---

[7] Plaintiffs' counsel initially attempted to ask Dr. Woods what the impact was to Plaintiff based on the harassment he described. The Court ultimately allowed a version of the question phrased as a hypothetical where Dr. Woods would assume that harassment had taken place. Dkt. No. 240 (3/26 Tr.) at 669:14–674:19.

[8] The harm and emotional distress also must occur within the limitations period to be recoverable.

[9] There were other leaves of absence post-dating the filing of this lawsuit.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

*three years*") (emphasis added). In contrast, other courts have remitted awards where the duration of the harassment was relatively short. *Diaz*, 598 F. Supp. 3d at 836 (emphasizing period of harassment was continuous but only lasted for nine months).

At bottom, in view of comparable cases, the record here does not support an award reaching the staggering and unprecedented level of $5 million, or even an award in the $1–2 million range established in *Diaz, Lawson, Gray,* and *Turley*. Instead, the more comparable cases on the facts are *Paul* ($150,000) and *Sooroojballie* ($250,000). Accordingly, Cemex respectfully requests this Court order a new trial or issue a conditional remittitur establishing damages at no greater than $150,000.

**D.    Any Order Granting New Trial Should Be Limited to Liability and Damages Occurring within the Limitations Period.**

Finally, to the extent this Court orders a new trial, it should do so only as to liability (*infra*, Section IV.A) and compensatory damages (*infra*, Section IV.C.). The punitive damages determination is not within the scope of the re-trial and should not be retried as it is a distinct issue the jury already determined. *See Robbins v. Aleutian Queen Seafood, Inc.*, 15 F.3d 1089 (9th Cir. 1994) (courts may order partial new trial so long as the issue being retried is "so distinct and separable from the others that a trial of it alone may be had without injustice.") (citations and quotations omitted); *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005) ("Compensatory damages and punitive damages serve different purposes; compensatory damages redress concrete loss caused by the defendant's wrongful conduct, while punitive damages are aimed at deterrence and retribution.") (citation omitted). Additionally, the re-trial should be limited to Plaintiff's alleged harm that occurred within the applicable limitations period.

## V.    CONCLUSION

Based on the foregoing reasons, the Court should enter judgment as a matter of law in Cemex's favor. At a minimum, the Court should order a new trial on liability and emotional distress damages. And even if liability were to stand, the Court should remit the damages award to the maximum amount sustainable by the evidence.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES

DATED: May 1, 2026                                        HANSON BRIDGETT LLP


                                        By:    /s/ *Patrick Burns*
                                               DOROTHY S. LIU
                                               AREZOO JAMSHIDI
                                               PATRICK BURNS
                                               JOSUE R. APARICIO

                                               Attorneys for Defendant
                                        CEMEX Construction Materials Pacific, LLC

Case No. 3:23-cv-00428-WHO

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FRCP 50 AND 59; MEMORANDUM OF POINTS AND AUTHORITIES